UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| ROY BANKS,<br><br>**Plaintiff,**<br><br>v.<br><br>OFFICE OF THE SENATE SERGEANT-AT-ARMS and DOORKEEPER,<br><br>**Defendant.** | Civil Action No. 03-56   (HHK/JMF)<br>Civil Action No. 03-686 (HHK/JMF)<br>Civil Action No. 03-2080(HHK/JMF) |

## MEMORANDUM OPINION

Currently pending and ready for resolution are the following five motions: 1) <u>Plaintiff's Motion For an Order that Plaintiff's First Request for Admissions to Defendant Office of the Senate Sergeant at Arms and Doorkeeper are Deemed Admitted and the Matters Therein are Conclusively Established and Memorandum of Points and Authorities in Support of His Motion</u> ("Plains. Req. for Admissions"), 2) <u>Plaintiff's Motion to Strike Affidavit submitted by Ronald Tisch In Support of Defendant's Reply in Support of Defendant's Motion for Reconsideration of Portions of Magistrate Judge Facciola's Order Dated May 3, 2004</u>, 3) defendant's <u>Motion to Seal</u>, 4) <u>Defendant's Motion for Leave to File Surreply to Plaintiff's Reply to Defendant's Opposition to Plaintiff's Motion for an Order that Plaintiff's First Request for Admissions to Defendant Office of the Senate Sergeant at Arms and Doorkeeper are Deemed Admitted</u>, and 5) defendant's <u>Request for Oral Hearing on Order to Show Cause</u>.

### DISCUSSION

I.   <u>Counseling and Mediation Documents</u>

As I indicated in my earlier opinion,[1] when Congress subjected agencies within the legislative branch to monetary liability for claims of race and other discrimination, it created a mandatory mediation and conciliation process. Congress required, however, that all counseling and mediation be "strictly confidential." 2 U.S.C. § 1416(a)&(b).[2]

The defendant, the Senate Sergeant-at-Arms ("SSA"), "served a subpoena upon the Office of Compliance ("OC"), created by Congress to, *inter alia*, supervise the counseling and mediation processes," demanding the production of "the documents plaintiff submitted to the Office of Compliance, including his requests for counseling and mediation." Banks v. Office of Senate Sergeant-At-Arms, 222 F.R.D. at 12. Ultimately, I sought briefs from the OC and the SSA as to whether the OC should be compelled to comply with the SSA's subpoena.

OC reasons that Congress meant what it said and that its statutory obligations would be impossible to fulfill unless the strict confidentiality Congress imposed is honored by precluding SSA from securing the documents it wants. For its part, SSA argues that it will be denied due process if it is denied the documents; without them, it cannot establish whether or not plaintiff exhausted his administrative remedies as to the claims he now brings before this court and is therefore prevented from establishing, if it can, that the court lacks jurisdiction over any unexhausted claim.

I will exercise my discretion and not resolve this matter. Both OC and SSA are creatures of the Congress, its agents, and its employees. As I have just noted, OC was created by Congress

---

[1] Banks v. Office of Senate Sergeant-at-Arms, 222 F.R.D. 7, 12 (D.D.C. 2004).

[2] All references to the United States Code or the Code of Federal Regulations are to the electronic versions that appear in Westlaw or Lexis.

to, *inter alia*, supervise the counseling and mediation process. Indeed, the statute creating the office indicates that it has been created as an independent office "within the legislative branch." 2 U.S.C. § 1381. The SSA is, of course, an employee of the Senate. The controversy over access to the records is therefore an intramural battle between an agency "within the legislative branch" and an employee of the legislative branch as to the meaning of a congressional statute. To resolve it would be to "meddle in the internal affairs of the legislative branch."[3] Congress itself can resolve this battle between its agent and one of its employees if it sees fit. Until it does, this court will not interfere with or attempt to supercede Congress's power to resolve disputes among its agents or employees.

II.     Timeliness of Privilege Log

In a previous opinion, I concluded that SSA's privilege log was not timely filed. While there is no need to revisit that determination, it is first important to note that, in each of its requests for production, plaintiff insisted that if the SSA claimed that any document sought was privileged, it "furnish a list describing each document for which privilege is claimed, together with the following information . . . (d) the subject matter of the document; (e) the basis on which the privilege is claimed." <u>Plaintiff's Motion to Compel Defendant to Provide Privilege Log and Motion for an Order That Defendant has Waived Privilege as to Responsive Documents not Produced</u> at Exhibit A, page 2. While SSA claimed that certain documents were privileged, it did not file a motion for a protective order, either to be relieved of the obligation plaintiff was

---

[3] Moore v. U.S. House of Representatives, 733 F.2d 946, 956 (D.C. Cir. 1984). Accord: Humphrey v. Baker, 848 F.2d 211 (D.C. Cir. 1988); Melcher v. Fed. Open Market Comm., 836 F.2d 561 (D.C. Cir. 1987); Skaggs v. Carle, 898 F. Supp. 1 (D.D.C. 1995). See also Chenoweth v. Clinton, 181 F.3d 112 (D.C. Cir. 1999).

purporting to impose upon it or, if it was ready to concede it had such an obligation, seeking an enlargement of time within which to respond.

Additionally, when, by letter of January 16, 2004, plaintiff's counsel demanded production of a privilege log as to the withheld documents, SSA's then-counsel responded, in her letter of January 20, 2004, that she was "in the process of preparing the requested privilege log." Letter of January 20, 2004 from Brenda J. Pence to William Farley, attached to Defendant's Response to the Court's Order to Show Cause Regarding the Imposition of Sanctions. Again, the SSA never indicated that it was not going to comply with its obligation to produce the privilege log that Farley was demanding until its objections to plaintiff's request for production of documents were first resolved. Instead, SSA indicated that it was in the process of preparing the log. When Ms. Pence was replaced, SSA's new counsel also indicated that the log was being prepared in his letters to Farley and again never indicated that SSA was objecting to producing the log until its earlier objections were resolved. To the contrary, in his letter to Farley of March 12, 2004, new counsel for SSA "assured [Farley] in writing that the privilege log was forthcoming." Declaration of Ronald I. Tisch in Support of Defendant's Response to the Court's Order to Show Cause Regarding the Imposition of Sanctions, ¶ 5. Plaintiff filed the motion to compel on March 12 and the privilege log was produced on March 23, 2004.

I also previously concluded that the privilege log's untimely production justified the imposition of sanctions. Notably, at no point in the briefing of the many issues resolved by that earlier opinion did SSA argue that it had no obligation to produce the privilege log until I resolved its objections to the plaintiff's request for production. Now, however, that plaintiff has moved for sanctions and the waiter has brought the bill, SSA insists, for the first time, that its

obligation to file a privilege log did not even arise until the court had first ruled on its other objections to the production sought.

  First, and to put it mildly, this argument comes awfully late.  It was not made when I initially ruled on plaintiff's complaint that the privilege log was overdue and, perhaps more significantly, it was not asserted by SSA's counsel in the correspondence with plaintiff's counsel pertaining to the SSA's obligation to produce a privilege log.  At no point did SSA's counsel ever tell plaintiff's counsel that it was taking the position that it would not produce a privilege log until its objections were resolved.  Surely, a central principle of American jurisprudence is that a court will not consider a belated argument that could and should have been made sooner.  This principle, of course, animates the refusal of courts of appeals to consider arguments not made in the courts below and the refusal of lower courts to consider arguments made for the first time on a motion for reconsideration.  See, e.g., Hutchinson v. CIA, 393 F.3d 226 (D.C. Cir. 2005).  Surely, it mocks every notion of fair, efficient, and orderly procedure to permit a party to raise for the first time, when sanctions are sought, an argument it had an obligation to make earlier.

  Furthermore, SSA's assertion that the law justifies the position it now takes, besides being a transparent *post hoc* rationalization, is incorrect.  SSA now indicates that the law is unclear as to when a privilege log must be filed and, in the absence of clarity, it was, at the time, entitled to rely on a statement in a district court decision in the Eastern District of California. <u>Defendant's Reply to Plaintiff's Reply to Defendant's Response to the Court's Order to Show Cause Regarding the Imposition of Sanctions</u> ("Defs. Reply to Show Cause") at 4 (quoting Jackson v. County of Sacramento, 175 F.R.D. 653, 656 (E.D. Cal. 1997)).  SSA says that the

above-referenced case "states that a privilege log is not required 'until there is a good faith challenge to the privilege claim.'" Id.

Putting to one side how SSA could have "relied" on a case they never cited in either their letters to Farley or their submissions to this court, and apparently only discovered the case in response to my order to show cause why SSA should not be sanctioned, the supposed lack of clarity in the law should have prompted SSA to seek judicial relief well before they did if they were as concerned as they now profess.

Instead, SSA now finds support for their assertion of a lack of clarity in the case law in a law review article that SSA says indicates that "a review of various opinions from different circuits reveals no consensus as to when a privilege log must be provided pursuant to [Federal Rule of Civil Procedure] 26(b)(5)." Defs. Reply to Show Cause at 4 (citing John E. Tyler III, Analyzing New Protections for Intangible Work Product and Harmonizing That Protection with the Use of Privilege Logs, 64 **Univ. Miss. Kan. City L. Rev.**, 743, 751-52 (1996)).  But an analysis of the cases discussed by that author in fact indicates that federal courts have not hesitated to invoke the extreme sanction of waiver when a party fails to submit its privilege log in a timely manner,[4] and one court even did so when the party did not produce the log

---

[4] First Sav. Bank v. First Bank Sys., Inc., No. CIV.A.95-4020, 1995 WL 250394 (D. Kan. March 30, 1995).  See also Nat'l Union Fire Ins. Co. v. Midland Bancor, Inc., 159 F.R.D. 562, 567 (D. Kan. 1994) (general allegation of privilege insufficient; if privilege is not specified and substantiated it may be lost); John Labatt Ltd. v. Molson Breweries, Nos. CIV.A.93-75004, 94-71540, 95 WL 23603 (S.D.N.Y. Jan. 20, 1995) (failures to produce privilege log at hearing held on motion to compel and to bring contested documents to court for *in camera* justified granting of motion to compel, despite claim of privilege).

simultaneously with the rest of its response to a request to produce documents.[5]  In other cases, involving differing sets of facts, courts have permitted privilege logs to be served after other developments in the case occurred.[6]  One court even declined altogether to order a party to submit a privilege log when it was self-evident to that court that the discovery request was completely improper.[7]

>   Moreover, SSA ignores the very commentator they cite.  That commentator states:

>> Arguably, the most defensible time to produce a Rule 26(b)(5) privilege log is with or in conjunction with response to the specific discovery, although this is not the most practical approach.  A reasonable approach might be to require the privilege log when the unprotected documents are produced.  Since the opposing party will learn the nature of unprotected documents being produced; they logically could learn the nature of the withheld documents at the same time.

Tyler, supra, at 752.

Additionally, that commentator cites a particularly well-regarded treatise for the proposition that courts can reasonably expect that a specific claim of privilege, in the form of a privilege log or otherwise, will be made when the producing party turns over its non-privileged documents. Id. (citing **Charles A. Wright, Arthur R. Miller and Richard L. Marcus, Federal Practice and Procedure** § 2016.1, at 236 (1994)).

---

[5] Rural Water Sys. Ins. Benefit Trust v. Group Ins. Adm'r, 160 F.R.D. 605 (D. Kan. 1995)

[6] Mader v. Motorola Inc., No. CIV.A.92-8089, 1994 WL 535125 (N.D. Ill. Sept. 30, 1994); Hurley v. JARC Builders, Inc., 164 F.R.D. 39 (E.D. Pa. 1995); In re: Brand Name Prescription Drugs Antitrust Litig., No. CIV.A. 94-897, 1995 WL 613126 (N.D. Ill. Oct. 17, 1995); Trzeciak v. Apple Computers, Inc., No. CIV.A. 94-1251, 1995 WL 20329 (S.D.N.Y. Jan. 19, 1995).

[7] Garner, Lovell & Stein P.C. v. Burnett, 911 S.W.2d 108 (Tex. App. 1995).

Finally, in the California case upon which SSA relied, the statement that the duty to provide a privilege log "does not arise until there is a good faith challenge to the privilege claim" was uttered in a case in which the party claiming privilege had already provided an explanation of its privilege claim in the form of two letters.  The court, rejecting the technical claim that defendant had nevertheless waived its privilege because of its failure to file a privilege log, indicated that, since the defendant had explained the basis for the privilege claim in the two letters, its production of a more specific privilege log could wait until plaintiff challenged the existence of the privilege on the basis of the explanation it had been given. Jackson, 175 F.R.D. at 657.

Thus, an accurate summary of the existing case law would have been that federal courts are insistent upon the timely production of a privilege log, have enforced waivers when the production was not timely, and concluded, in one given case, that timely production meant when a party produced the documents that were not privileged.  Furthermore, at least one court excused a party from producing a privilege log only because the opposing party had already provided an adequately specific description of the nature of the privilege claimed and its application to the documents in question or when it was self evident from the request itself that a party was seeking documents to which it was not entitled.

That case law would have alerted any lawyer with a healthy respect for his own skin to either produce the privilege log with the documents her client was producing, negotiate some other arrangement with opposing counsel, or seek judicial relief from the obligation to produce a privilege log until a date ceratin or until some other event, such as the resolution of its objections to the document requests.  What a lawyer cannot do is ignore the obligation to produce a

8

privilege log when the opposing party has repeatedly demanded it over several months, and then, without judicial approval, further delay its production once opposing counsel formally demanded the privilege log by a letter. Indeed, what is so maddening about this entire controversy is that it so easily could have been avoided by SSA's moving for a protective order. But SSA never did and now, plaintiff had to file a motion to compel. At this point in time, simple fairness dictates that SSA reimburse plaintiff for the fees and costs it incurred.

Finally, SSA can take no comfort in the decision of United States v, Philip Morris Inc., 347 F.3d 951 (D.C. Cir. 2003).[8] SSA claims the decision stands for the proposition that a party is relieved of any obligation to produce a privilege log until its objections to a request to produce documents are resolved. In that case, the trial judge had enforced a waiver of a privilege against a party who had asserted colorable objections to the production of documents in addition to arguing that they were privileged. The court of appeals concluded that the trial judge had erred in failing to resolve those objections before concluding that the privilege was to be deemed waived, or to use a more accurate word, forfeited. That case, if anything, militates in favor of sanctions. Unlike the party in that case, who pressed its objections before complying with the obligation to produce a privilege log, SSA never insisted that this court rule on its objections before they could be obliged to file the privilege log. If anything, that case should encourage parties to press their objections aggressively and insist they be resolved before they are obliged by the court to produce a privilege log. In this case, SSA did the converse; it never pressed its objections and assured its opponent that it would produce a privilege log. SSA's newly founded

---

[8] Note that this case was decided on November 4, 2003, and SSA could not have relied on it until then.

9

reliance on the rationale of the <u>Philip Morris</u> decision hardly justifies its escaping the consequences of its original failure to bring its objections to the court and seek protection from having to file a privilege log until those objections were ruled upon.

With that said, however, I will limit the sanction to the payment of the fees incurred by plaintiff in moving to compel and having to answer SSA's response to the order to show cause. In my view, imposing a forefeiture of the privilege claimed is disproportionate to the harm caused.

I appreciate, as my initial opinion indicates, that plaintiff is also complaining about the damages he incurred by SSA's not producing many of the documents sought until shortly before the end of discovery. But the damages done plaintiff by that wrong (if there were any) are independent of the delay in securing the privilege log. If plaintiff believes that he is due relief in the form of sanctions from the delayed receipt of those documents, he will have to make a specific showing of how he was damaged by the late receipt of the documents, what relief is appropriate, and why the damage done cannot otherwise be remedied now, given the new setting of a trial date for April 2005.

III.   <u>Plaintiff's Request for Admissions</u>

On May 3, 2004, I ordered the defendant to file responses to plaintiff's first request for admissions. On May 17, 2004, plaintiff filed its motion for reconsideration, asking the presiding judge, Judge Kennedy, to vacate my May 3, 2004 order. On June 2, 2004, plaintiff moved for a stay of its obligation to comply with the May 3, 2004 order, pending resolution of his motion for reconsideration. Judge Kennedy never ruled on the motion to stay and thus plaintiff now moves that his request for admissions be deemed admitted, relying on the portion of Rule 36(a) of the

Federal Rules of Civil Procedure that indicates that "[t]he matter [to which the request for admissions speaks] is admitted unless, within 30 days after the service of the request," the responding party either files its answer or an objection.

First, this rule has never been interpreted so woodenly.  As defendant points out, the federal courts have permitted a party to answer the requests after the 30-day deadline has passed. See, e.g., Smith v. First Nat'l Bank of Atlanta, 837 F.2d 1575, 1577 (11th Cir. 1988); Gutting v. Falstaff Brewing Corp., 710 F.2d 1309, 1312 (8th Cir. 1983); Moosman v. Joseph P. Blitz, Inc., 358 F.2d 686, 688 (2nd Cir. 1966).  See also 8 **Charles Alan Wright, Arthur R. Miller, & Richard L. Marcus, Federal Practice and Procedure** § 2257 & n. 9 (1994) ("The court has power to allow additional time for a response to a request for admissions even after the time fixed by the rule has expired.  Thus, the court can, in its discretion, permit what would otherwise be an untimely answer.").  There is therefore nothing that automatically requires that the requests for admission be deemed admitted merely because 30 days have transpired since the defendant was ordered to respond.

Second, unlike the situation to which plaintiff analogizes–the refusal to attend a deposition because a party has filed for a protective order prohibiting the deposition– this situation involves the relationship between a junior and senior court and the unquestioned right of a party to seek review of an unfavorable decision by a magistrate judge.  Had the motion to stay been addressed to me, I would have unquestionably granted it.  I always do.  To force a party to comply with an order while it was seeking review of that order would be, in effect, to compel that party to abandon in advance the victory it might gain by reversal of the magistrate judge's order.  It would also be presumptuous and arrogant for a magistrate judge to presume his own

infallibility and deny a party the right to appeal from his decision by insisting upon compliance with an order that may be reversed. I will therefore not deem the requests admitted but instead will do nothing until Judge Kennedy resolves the motion for reconsideration.

## CONCLUSION

An Order accompanies this Memorandum Opinion.

_____
Dated:                                           JOHN M. FACCIOLA
                                                 UNITED STATES MAGISTRATE JUDGE