**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

**ROY BANKS,**
            **Plaintiff,**

            **v.**

**OFFICE OF THE SENATE SERGEANT-**
**AT-ARMS and DOORKEEPER,**
            **Defendant.**

**Civil Action No.  03-56    (HHK/JMF)**
**Civil Action No.  03-686  (HHK/JMF)**
**Civil Action No.  03-2080(HHK/JMF)**

**MEMORANDUM OPINION**

This case has been referred to me for full case management.  Currently pending and ready for resolution is plaintiff's Motion for Discovery and Sanctions Pursuant to the Court's February 16, 2005 Order.  For the reasons stated herein, the motion is granted in part and denied in part.

**I.     BACKGROUND**

On May 22, 2003, the Assistant Senate Sergeant at Arms,[1] Rick Edwards ("Edwards"), fired Roy Banks ("Banks" or "plaintiff") because he believed that Banks told the Director of Human Resources, Doug Fertig ("Fertig"), that if a certain employee ("S.R.")[2] "wants to have people who will be subservient, he better go back to restaurants and manage Hispanics."  Defendant's Opposition to Plaintiff's Motion and Memorandum in Support for Discovery and Sanctions ("Def.'s Opp."), Ex. 4.  In a memorandum to Banks, Edwards indicated that Banks'

---

[1] I will refer to the defendant, the Office of the Senate Sergeant at Arms, as SAA.

[2] In pleadings filed by both plaintiff and defendant, there have been allegations that certain SAA employees made discriminatory remarks and others reported that such discriminatory statements were being made.  In consideration of the privacy rights of these third parties, the court has referred to them by their initials.

comment "was racist and reflects an improper bias that will not be tolerated, especially in a

manager." <u>Id.</u>  Banks has challenged his termination as being improperly based on his race, age,

alleged disability, sex, or in retaliation for various complaints or claims he has made. <u>See</u> <u>Banks</u>

<u>v. Office of the Senate Sergeant at Arms</u>, 222 F.R.D. 7, 9 (D.D.C. 2004).

Discovery in this matter has been long, protracted, and litigious.  Currently pending

before me is the issue of whether the court should award sanctions to plaintiff because defendant

produced, after the close of discovery, a group of documents pertaining to an SAA investigation

of whether Capitol Facilities managers favor Hispanics or whether there were any rumors that

Capitol Facilities managers discriminated in that manner.  Plaintiff seeks severe sanctions,

including entry of default judgment, because he claims that the late production of these

documents ("Investigatory Notes" or "Notes") has "changed everything about this case."

<u>Plaintiff's Motion and Memorandum in Support of Motion for Discovery and Sanctions Pursuant</u>

<u>to the Court's February 16, 2005 Order</u> ("Pl.'s Mot.") at 1-2.  Defendant concedes that the

documents were late but insists that they were only responsive to plaintiff's Third Request for

Production of Documents.  Thus, according to defendant, the notes were only one month late,

and any harm plaintiff suffered can be easily remedied by asking questions about the

investigation during the 30(b)(6) deposition, which was the only outstanding discovery matter at

the time the documents were produced and which still has not been completed.

## II.   DISCUSSION

### A.   Legal Standard

Under Federal Rule of Civil Procedure ("Rule") 37, a court may sanction a party that fails

to comply with a discovery order. Fed. R. Civ. P. 37(b)(2).  The Federal Rules authorize a wide

array of sanctions, including the award of reasonable attorney's fees and expenses, caused by the failure to obey a court order "unless the court finds that the failure was substantially justified or that other circumstances make an award of expenses unjust." Id.  Similarly, under Rule 37(c)(1), the court may impose sanctions on a party that, without substantial justification, fails to disclose information required by Rule 26(a) or 26(e)(1). Fed. R. Civ. P. 37(c)(1).  As I have recently noted, "[a] party's actions are substantially justified if the issue presented is one that 'could engender a responsible difference of opinion among conscientious, diligent[,] but reasonable advocates.'" Peterson v. Hantman, 227 F.R.D. 13, 16 (D.D.C. 2005) (quoting Athridge v. Aetna Cas. & Sur. Co., 184 F.R.D. 200, 205 (D.D.C. 1998) (citations omitted)).

District courts are entrusted with broad discretion regarding whether to impose sanctions and the nature of the sanctions to be imposed. Bonds v. District of Columbia, 93 F.3d 801, 808 (D.C. Cir. 1996); Steffan v. Cheney, 920 F.2d 74, 75 (D.C. Cir. 1990).  However, the court's discretion is not without limits, and this Circuit has emphasized that any sanction awarded must be proportional to the wrongs done. Bonds, 93 F.3d at 808 ("The central requirement of Rule 37 is that 'any sanction must be 'just,' which requires in cases involving severe sanctions that the district court consider whether lesser sanctions would be more appropriate for the particular violation.  The choice of sanction should be guided by the 'concept of proportionality' between offense and sanction.") (internal citations omitted).

**B.    Analysis**

   *1.    Whether the Investigatory Notes and Supporting Documents Were Responsive to Plaintiff's Discovery Requests*

      *a.    First Interrogatory Number 8 and First Document Request Number 10*

3

On November 18, 2003, Banks propounded First Interrogatory Number 8, demanding that SSA describe any investigation into whether S.R. made any statement comparing African-American workers with Hispanic workers. Pl.'s Mot. at 14.  The interrogatory sought the identification of all documents that were "part of the investigation or viewed by any investigator." Id.  The accompanying request for production of documents, First Document Request Number 10, sought the production of the documents that were identified. Id.  In his motion, Banks focuses his argument almost entirely on these discovery requests.

Brenda J. Pence ("Pence") was the SAA attorney responsible for answering the interrogatories.  She objected to Interrogatory Number 8 as vague and ambiguous but also responded that no responsive documents existed.

 In June 2003, Jean McComish ("McComish"), Senior Human Resources Administrator for SAA, interviewed four employees as part of her investigation into: (1) whether they heard allegations that Capitol Facilities management favors Hispanics because "they are more subservient/easier to push around;" and (2) whether they had heard any Capitol Facilities supervisor or manager say that he or she favors hiring Hispanics because they are "more subservient/easier to push around." Pl.'s Mot., Ex. A.

A woman named K.C. told McComish that she had never heard a manager or supervisor say that Hispanics are easier to push around or that he or she preferred to hire Hispanics. According to McComish's notes, K.C. then said:

> About three or four months ago, [M.K.] and I were conversing after a night Facilities Worker was hired.  [M.K.] told me that she favored a candidate who was a black male whereas [S.R.] had favored hiring a Hispanic male. [M.K.] told me 'I don't understand. This other fellow is more qualified.  I don't know

4

> whether he [S.R.] prefers to hire Hispanics because they are more
> subservient/he thinks that they are more subservient.' The
> conversation never went any further than that. [M.K.] was venting.
> She was speaking out of her frustration; it was not an accusatory
> statement.  I did not take offense at what [M.K.] relayed and my
> husband is part Hispanic.
> If you are asking me do I believe that [certain managers] and I
> are racists, then I would say 'no.'  Do we have some team building
> issues in Capitol Facilities. Yes, but no one favors Hispanics over
> anyone else.

Pl.'s Mot., Ex. A, at 3.

Pence explains that, because Interrogatory Number 8 asked for documents pertaining to

whether S.R. had made certain statements, and McComish's investigation was for a different

purpose, "namely, to investigate whether an employee other than [S.R.] had made certain

allegedly improper statements," she did not think that information about McComish's

investigation was responsive to Interrogatory Number 8. Def.'s Opp., Ex. 7, ¶ 4.  In addition,

Pence objected to this interrogatory because, when read with the first seven, it exceeded the

numerical limits on interrogatories.[3]  Although she objected, Pence also drafted a substantive

response to Interrogatory Number 8 that stated: "Defendant never received any report that [S.R.]

had compared African-American workers with Hispanic workers, and therefore, an investigation

was never conducted regarding that allegation." Id., ¶ 6.

A few months later, after plaintiff propounded his third document requests and defendant

answered them, Pence was reviewing the draft privilege log and discovered that McComish's

notes of her June 2003 investigation had been designated as privileged and therefore not given to

---

[3] I previously sustained this objection in pertinent part. Banks v. Office of Senate
Sergeant at Arms, 222 F.R.D. 7, 10-11 (D.D.C. 2004).

Banks' counsel. Pence determined that the notes she had[4] of McComish's investigation were not privileged and turned them over.

For her part, McComish explained that the purpose of her June 2003 investigation was to determine whether a Capitol Facilities Night Manager, to whom I shall refer as M.K., had made inappropriate statements. Def.'s Opp., Ex. 3. She interviewed the employees named above, prepared a typed summary of "the salient facts," and forwarded it to counsel for the Sergeant of Arms to keep counsel informed of "personnel matters, which is my custom." Id. This must have been the report that Pence saw and that had been designated as privileged. McComish explains that she took her interviews notes and filed them in a file that bore the name of the Capitol Manager being investigated (M.K.). Thus, when she was asked by counsel to forward all documents relating the Roy Banks litigation, she did not send her notes because she did not believe that "they concerned the Roy Banks litigation." Id. When, however, Banks filed the motion I am now resolving and McComish saw Exhibit A, the notes of the interviews that Banks' counsel had secured from the SAA's counsel, she checked her file and realized that she had additional notes concerning the investigation she had done in June 2003. At that point, she forwarded the additional notes to counsel. She also checked with two other persons who had been present during the June 2003 interviews, Barbara Berger ("Berger") and Alvin Macon ("Macon"). Macon had no notes, but Berger did. All the notes, including McComish's, were then forwarded to SAA counsel who has since made them available to Banks' counsel.

Banks claims that, had he timely received the Investigatory Notes, he would have

---

[4] I say "notes she [Pence] had" because, as I understand the situation, McComish had more notes of the investigation that Pence had.

conducted discovery very differently.  Accordingly, Banks seeks sanctions, including $217,104 in attorney's fees,[5] the reopening of discovery at defendant's expense, and even a default judgment.

I see no merit in this application.

Banks insists that the notes should have been produced in response to Interrogatory Number 8 but, as Pence explained, the interrogatory sought information pertaining to any investigation conducted to determine whether S.R. made any statement comparing African-American workers with Hispanic workers.  It was certainly reasonable for Pence to conclude that an investigative report pertaining to whether M.K. made certain discriminatory comments was unresponsive.  This is so even though some of the answers, and thus some of the follow-up questions, named S.R. and other managers specifically.  Moreover, Pence was perfectly correct in objecting to the interrogatory as part of her argument that Banks had propounded too many interrogatories and SAA was not obliged to answer the interrogatory until I resolved the objection, which I did in June 2004.  Banks v. Office of Senate Sergeant-at-Arms, 222 F.R.D. at 10-11.

By the same token, I appreciate plaintiff's argument that, on their face, the Investigatory Notes state that the investigation concerned whether "any Capitol Facilities manager or supervisor" had made discriminatory remarks.  Because S.R. is a Capitol Facilities manager, the Notes seem to indicate that he, too, may have been a target of the investigation. Pl.'s Mot. at 12. Indeed, McComish's handwritten notes, which were produced in March 2005, indicate that she

---

[5]$217, 104 is the amount of litigation costs Banks has incurred from December 18, 2003 (the date he claims the notes should have been produced) until present.  He argues that this amount is appropriate because, without the Investigatory Notes, "discovery to this point has been useless." Pl.'s Mot. at 3.

asked some follow-up questions specifically about S.R., but there is no evidence that the investigation was conducted, initially or primarily, to inquire into S.R.'s behavior.

To the contrary, defendant has explained that the investigation itself was made to determine whether M.K., not S.R., had made racially discriminatory statements. In support, defendant attaches the declarations of both Pence and McComish. Indeed, even without these declarations, one could conclude that M.K. was the target of the investigation. Although the questions did not mention M.K. specifically and instead asked about Capitol Facilities managers, supervisors, and management (a group that included M.K.), it makes sense for the employer *not* to indicate the specific target of the investigation, lest the questions themselves suggest the manager's guilt or involvement. In addition, included in the defendant's production of documents is a copy of the folder in which McComish filed the Investigatory Notes. That tab bears the names of K.C. and M.K. and thus supports McComish's statement that she believed that the investigation–even after it was complete–related to an employee other than S.R.. Accordingly, there is substantial evidence to justify Pence's and McComish's conclusions that the investigation did not concern S.R. and were not responsive to Interrogatory Number 8 or Document Request Number 10. Accordingly, their actions simply do not warrant sanctions, especially sanctions of the magnitude sought by plaintiff.

Nonetheless, it is evident from the Investigatory Notes and McComish's and Berger's handwritten notes that the June 2003 investigation uncovered information about whether certain employees, namely K.C. and M.K., thought that S.R. managed in a discriminatory manner. Indeed, there is also evidence that, as the investigation into M.K. unfolded, the SAA began to ask witnesses follow-up questions specifically about S.R. In fairness, to allow plaintiff the full

benefit of all evidence that is relevant to this action, I will allow additional–but very

limited–discovery related to the Notes.  The scope of this additional discovery will be set forth

below.

> b.    *First Document Request Numbers 2 and 4*

In his reply memorandum, plaintiff fleshes out his argument that the Investigatory Notes

were responsive to First Document Request Numbers 2 and 4.[6]  Request Number 2 asked for "[a]

complete copy of each and every file maintained by Defendant pertaining to the claims made by

Plaintiff."  Plaintiff's Reply in Support of His Motion ("Reply") at 6.  Request Number 4 asked

for "[a]ll documents from any meeting or conversation which concerned the subject of this

lawsuit or Plaintiff's allegations." Id. at 5-6.

First, it is worth noting that the document requests ask for two very different things.

Reasonably construed, Banks' claims include his complaints that *he* was discriminated against on

the basis of race, age, alleged disability, sex, or in retaliation for complaints he had made.  His

allegations, on the other hand, include the specific events upon which he bases his claims.[7]

Indeed, in several paragraphs of one of his complaints, Banks alleges that S.R. favored

---

[6] Plaintiff also argues that the Notes were responsive to First Document Request Numbers 5 and 16.  These requests seek, respectively, all documents bearing plaintiff's name or signature and all documents created by the SAA that concern plaintiff or a position for which he applied at the SAA.  While McComish's handwritten notes may contain a scribble of the name "Roy Banks" and may, very tangentially "concern plaintiff," given the location of the notes, it is understandable that Pence and McComish did *not* identify and locate these documents in response to these requests for the reasons explained above.  Accordingly, sanctions are unwarranted.

[7] Banks argues that he was terminated not because he made a discriminatory statement but because he complained about S.R.'s pattern of discrimination. Pl.'s Mot. at 17. Defendant, on the other hand, insists that plaintiff was terminated for making a discriminatory statement, not for bringing discrimination to light. Def.'s Opp. at 6 n.8.

Hispanics and disfavored African-Americans.  For example, he alleges that S.R. was discriminatory in the way he disciplined employees, assigned work, and granted promotions. Complaint, Civ. A. No. 03-2080 ("Complaint") ¶ 68.  The complaint also alleges that Banks informed the Director of Human Resources that S.R. had made discriminatory statements, was favoring Hispanics, and felt that Hispanics were better workers than African Americans.

Strictly construed, therefore, Document Request Number 4 asks for materials documenting any conversations concerning S.R.'s alleged discriminatory behavior.  This differs from Interrogatory Number 8 because the information need not have been gleaned during an investigation of S.R.  However, to read this document request as a request for information concerning each paragraph alleged in Banks' complaints is problematic.  At the time the discovery requests were propounded, Banks had filed three complaints, all of which had been consolidated for discovery purposes on October 13, 2003.  The complaint in Civil Action No. 03-56 contained 60 allegations, the amended complaint in Civil Action No. 03-686 contained 78 allegations, and Civil Action No. 03-2080's complaint contained 157 allegations.  While many of these allegations overlap, the fact remains that the three complaints set out plaintiff's case in 295 separate paragraphs.

Confronted with a request to produce documents pertaining to the complaints or the allegations in them, Pence was not obliged to answer them immediately because the request incorporated an interrogatory, and she objected to the number of interrogatories propounded. Once that objection was overcome, there were two permissible readings of the request: (1) it sought documents pertaining to Banks' claims that he was discriminated against when he was terminated for making a racist statement; or (2) it sought documents pertaining to each of the 295

allegations in the complaints so that a document that pertained to any one of those allegations was demanded.

There are two problems with finding that the only justified response was to read the document request according to the second interpretation.  First, in this case, there were just under 300 allegations, and according to the second interpretation, Pence would have been obliged to answer the equivalent of hundreds of requests to produce.  Letting a demanding party seek information in this manner would prompt a diligent opponent to object on the grounds of vagueness or burdensomeness whenever a complaint contained many specific allegations.  It would also excuse the requesting party from Rule 34's requirement that a demanding party describe each request "with reasonable particularity."  See Fed. R. Civ. P. 34(b).  Had Banks wanted documents that supported his allegations that S.R. or other managers were discriminatory and were not punished as he was, or that his complaints about S.R.'s discriminatory behavior were justified, he should have structured his request accordingly.  His failure to specify what he wanted counts against him, not against his opponent.

Second, compared with the first reading, interpreting the request as requiring information relating to each specific allegation that supported Banks' actionable claims is an unnatural reading of the request.  Requests to produce documents are answered by lawyers, and lawyers would reasonably read a request for documents pertaining to plaintiff's claims and allegations to mean documents pertaining to Banks' complaints about his treatment.  While it could also mean documents pertaining to all the allegations Banks made, paragraph by paragraph, that reading is obviously so much more demanding that it would not naturally occur to a lawyer.  While, with hindsight, one could read the request as broadly as Banks has, it cannot be said that the more

11

limited and natural reading is unreasonable to the point of justifying the sanctions Banks seeks. Indeed, to the contrary, the court concludes that Pence's reading of the request was "substantially justified" and therefore not sanctionable.

However, as indicated above, because the Notes reveal information that may be relevant to plaintiff's claims, I will exercise my discretion and allow plaintiff to conduct very limited additional discovery, as explained in detail later in this memorandum.

        *c.*        *Rule 30(b)(6) Deposition Topic Number 25*

Rule 30(b)(6) Deposition Topic Number 25 provides: "Whether there has been, and the number of investigations defendant has taken concerning any claim by Mr. Banks. . . ." Pl.'s Mot. at 9. When, during the 30(b)(6) deposition, Banks' counsel inquired about investigations into Banks' claims of racial discrimination, SAA's counsel objected and refused to permit McComish, the 30(b)(6) deponent, to answer.[8] Banks complains that the SAA purposely objected to questions concerning this topic, and even requested a mysterious water break, in order to keep hidden the Investigatory Notes.

But, Banks ignores the fact that the topic sought information concerning investigations into why Banks was terminated, not about whether S.R. or any other manager was engaging in discrimination. Additionally, even if McComish answered counsel's questions and her attention was drawn to her notes of the investigation she conducted in June 2003, she would have said that the  investigation was not about any claim of racial discrimination Banks made but about whether another employee, M.K., had made certain comments. Thus, Banks suffered nothing from not

---

[8] For a more complete analysis of the controversy and my resolution of it, see <u>Banks v. Office of Senate Sergeant at Arms</u>, 222 F.R.D. at 19-20.

having the notes during the deposition.  In addition, defendant explains that McComish was

designated as the 30(b)(6) deponent to testify about Banks' claims of disability discrimination,

not racial discrimination.  Therefore, counsel's questions regarding investigations into racial

discrimination were to be asked of the other 30(b)(6) deponent, Macon, whose deposition

remains open.  I find nothing suspicious about these objections, nor do I find them sanctionable.

> *d.*      *Rule 26(a)(1) Initial Disclosures*

Finally, plaintiff argues that the Investigatory Notes ought to have been identified in

defendant's Rule 26(a)(1) initial disclosures.  Rule 26(a)(1) states that the following information

must be produced without awaiting a discovery request:

> (A) the name and, if known, the address and telephone number of
> each individual likely to have discoverable information that the
> disclosing party may use to support its claims or defenses, unless
> solely for impeachment, identifying the subjects of the information;
> (B) a copy of, or a description by category and location of, all
> documents, data compilations, and tangible things that are in the
> possession, custody, or control of the party and that the disclosing
> party may use to support its claims or defenses, unless solely for
> impeachment;
> (C) a computation of any category of damages claimed by the
> disclosing party[;]. . .
> (D) for inspection and copying as under Rule 34 any insurance
> agreement. . . .

Fed. R. Civ. P. 26(a)(1).  For the reasons stated elsewhere in this memorandum, it was reasonable

for the defendant to conclude that neither the Investigatory Notes nor the medical records

(discussed below) fell within any of these categories.  Plaintiff's argument that these documents

should have been produced as part of defendant's initial disclosures is without merit.

> *2.*      *Whether the Medical Records Were Responsive to Plaintiff's Document*
> *Requests*

Banks argues that defendant should be sanctioned for its late production of another group

of documents, which concern the treatment of a similarly situated white female that was permitted to use all of her disability leave before retiring. Pl.'s Mot. at 25.  Banks wants to depose all of the individuals identified in the late-produced documents, including Catherine Brooks (who handled the worker's compensation claims of both Banks and the white female); McComish (who supervised Brooks); Fertig (who was involved in decisions regarding the continuation of pay); and several others who were involved in these issues. Id.

According to defendant, the medical records were not responsive to any discovery requests, and therefore plaintiff was not harmed by their late production and is not entitled to sanctions.  Def.'s Opp. at 11.

Plaintiff insists that the medical records were requested in discovery.  Banks' complaint states that the defendant improperly "delayed benefits that Mr. Banks was entitled to receive and benefits which were provided to other SAO employees who did not file complaints." Complaint, ¶ 85.  Because Document Request Numbers 2 and 4 seek information relating to Banks' complaints and allegations, Banks argues that the medical records were responsive to these requests.  For the reasons stated above, however, to credit such an argument would allow plaintiff to avoid the requirements of Rule 34(b).  In addition, given the lengthy allegations in this case and the availability of two reasonable interpretations of the request, such a reading would place an unjustifiable burden on defendant, and I will not allow it.  There has been no argument that plaintiff propounded an interrogatory or document request for the medical records of other employees, and therefore the documents, whenever they were produced, cannot be considered "late."

     3.     *The Relief Sought*

Plaintiff insists that the Investigatory Notes provide "strong circumstantial evidence that S.R. did discriminate against Blacks in favor of Hispanics and support Banks' contention that he was fired for bringing this fact to the attention of the Director of Human Resources and in retaliation for filing his earlier complaints." Pl.'s Mot. at 17-18.  He further states that he "would have prepared his case much differently with the knowledge that there was evidence that defendant did not have a consistent zero tolerance policy," id. at 12, "[a]nd that his retaliation claims were solidified by [K.C.] and [M.K.]." Reply at 8.  Finally, he claims that he was "extremely prejudiced by the withholding of Investigative Notes which reveal[] other similarly situated employees were not even disciplined for making the same comments that Banks was terminated for allegedly making." Pl.'s Mot. at 18.  Accordingly, Banks seeks to re-depose, at defendant's expense, every witness that has testified in this case and all individuals involved with the Investigatory Notes. Id. at 26.  He also seeks other sanctions, including a default judgment.

As stated above, this court has concluded that defendant did not purposefully hide the Investigatory Notes and that defendant was substantially justified in concluding that they were not responsive to plaintiff's discovery requests, except for the Third Request for Production of Documents.[9]  Accordingly, the Notes were, at most, one month late, and the only discovery outstanding during this time period was the open deposition of Macon, which remains open today.  Given these findings, the court cannot see how the late production of the Notes has caused any of the harm Banks claims it has caused.  Moreover, to award Banks over $217,000 in attorney's fees, additional discovery at defendant's expense, or a default judgment would

---

[9] Defendant concedes that the Notes were responsive to the plaintiff's third document requests.

15

unquestionably violate "[t]he central requirement of Rule 37. . . that 'any sanction must be 'just'" and proportional to the wrong done. <u>See</u> <u>Bonds</u>, 93 F.3d at 808 (internal citations omitted).

By the same token, to ensure that Banks has the opportunity to gather all relevant evidence, this court will allow plaintiff the following limited discovery.  Banks may depose, at his own expense, Jean McComish, Barbara Berger, Doug Fertig, K.C., M.K, and S.R.[10]  Each deposition shall last no more than two hours, and the questions shall be limited to: (a) the questions asked and answers provided during the June 2003 investigation; (b) any subsequent interviews that were or appeared to be about discriminatory remarks or behavior by any Capitol Facilities manager or supervisor; and (c) the decision to pursue or not to pursue disciplinary action against anyone mentioned during the investigation, including M.K. and S.R.

An Order accompanies this Memorandum Opinion.


Dated:                                        _____
                                              JOHN M. FACCIOLA
                                              UNITED STATES MAGISTRATE JUDGE

---

[10] Of course, plaintiff may also inquire about the Investigatory Notes when Alvin Macon's 30(b)(6) deposition is taken.