UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| ROY BANKS, ) | |
| ) | |
| Plaintiff, ) | Civil No.: 03CV0056 (HHK)(JMF) |
| ) | 1:03CV00686 (HHK/JMF) |
| ) | 1:03CV02080 (HHK/JMF) |
| ) | |
| v. ) | |
| ) | |
| OFFICE OF THE SENATE SERGEANT- ) | |
| AT-ARMS and DOORKEEPER, ) | |
| ) | |
| Defendant. ) | |
| ) | |

**PLAINTIFF'S RULE 37 MOTION FOR AN ORDER PRECLUDING DEFENDANT FROM OFFERING TESTIMONY CONCERNING THE SUBJECT MATTER OF PLAINTIFF'S RULE 30(B)(6) NOTICE OF DEPOSITION AND FEDERAL RULES OF EVIDENCE, RULE 612 REQUEST FOR DOCUMENTS AND MEMORANDUM IN SUPPORT OF HIS MOTION**

Banks brings this motion pursuant to Federal Rules of Civil Procedure, Rule 37, and Federal Rules of Evidence, Rule 612, seeking enforcement of the Federal Rules as well as this Court's April 27, 2006, February 5, 2004 and May 3, 2004 orders concerning the Court's Orders for the taking and defense of the Defendant Sergeant at Arms' ("SAA") Rule 30(b)(6) Deposition. Though Banks believes the SAA failed to properly answer all eight of the Court approved Topics, he limits this motion to just three topics that are critical to his case.

At approximately 2:00 p.m. on August 8, 2006, pursuant to Local Rule 7(m), Banks requested Defendant's consent to this motion. The required Local Rule 7(m) discussion occurred, and the defendant has informed plaintiff they will oppose this motion.

Banks has been denied the discovery he is entitled pursuant to the Federal Rules of Civil

1

Procedure, Rule 30. If Banks was permitted to obtain this Rule 30(b)(6) information, as the Court ordered, he could have used the factual statements from the SAA to hone the legal basis for his case, or help him estimate the value of the stakes in the case and his chances of prevailing on the merits. Due to the SAA's conduct, litigation costs are increased and uncertainty reigns, exactly the opposite of the wishes of the Court as evidenced by the earlier rulings.

In addition, pursuant to Federal Rules of Evidence Rule 612, Banks seeks all documents reviewed by the Rule 30(b)(6) witnesses in preparing for their testimony and refreshing their recollections.

## I. BRIEF BACKGROUND

On May 22, 2003, Banks was terminated by Defendant. On October 14, 2003, Banks filed his third Complaint against Defendant SAA, alleging he was discriminated against on the Basis of Race (African-American); Gender (Male); Disability; Age; Wrongful Termination; Discrimination in Compensation; Deprivation of Employment Opportunities; Retaliation and Unlawful Classification in Violation of the CAA and Federal Law. Case No. 1:03CV02080. This case was consolidated with Banks first two cases for discovery. The claims in this matter can be broken down into four general causes of action: (1) Failure to promote/hire based on illegal criteria as provided in statutes made applicable to Defendant by the CAA; (2) Hostile Work Environment; (3) Retaliation for filing federal lawsuits and other complaints; and (4) illegal discrimination in termination.

The Court ordered the parties to meet to develop Rule 30(b)(6) questions for the defendant to answer at their Rule 30(b)(6) deposition. *Banks v. Office of Senate Sergeant-at-Arms*, 222 F.R.D. 7, 19 (D.D.C. 2004). Banks sought 30 Rule 30(b)(6) questions and the defendant sought to limit it to just eight questions. Banks basically agreed to Defendant's eight questions and filed with the

Court the questions Banks would be permitted full and complete discovery.[1]  A copy of the Court approved Rule 30(b)(6) Topics are attached here as Exhibit "A."

The Rule 30(b)(6) topics were to be drafted by the parties under certain parameters provided by this Court - the parties acting in good faith and the questions being meaningful exercises were explicit instructions given by the Court.

On May 3, 2004, this Court issued this order:

> I will wipe the slate clean and ***require the parties to attempt in good faith to arrive at a mutually agreeable listing of topics for the 30(b)(6) depositions*** that are to be taken and the 30(b)(6) witnesses who will speak to them. In arriving at that list, ***I expect the parties to find topics that will insure that the 30(b)(6) depositions are meaningful exercises in ascertaining information that has not been previously discovered or are necessary to ascertain the position SAA took or takes as to factual and legal issues that have arisen.*** By taking these depositions, plaintiff is certifying to me that he will not ask questions that duplicate questions previously asked of other witness or seek information that he already has by virtue of responses to other discovery devices. The list of topics, that will have to be approved by me before the deposition is taken, will have to be consistent with that certification.

*Banks v. Office of Senate Sergeant-at-Arms*, 222 F.R.D. 7, 19 (D.D.C. 2004) (emphasis added).  A copy is attached here as Exhibit "B."

On February 5, 2004, the Court issued an order concerning this litigation instructing the parties that "depositions of all remaining witnesses will be conducted in accordance with the principles elucidated in this opinion.  Failure to comply with them *will* result in sanctions."

---

[1]  Banks did not want to impose any hardship on the SAA and narrowed his discovery requests to the bare minimum that would permit him to present his case for trial.  *See e.g.,* JOHN SETEAR, *The Barrister and the Bomb: The Dynamics of Cooperation, Nuclear Deterrence, and Discovery Abuse*, 69 B.U.L. REV. 569 (1989).

3

(Emphasis added).[2]  *Banks v. Office of Senate Sergeant-at-Arms*, 222 F.R.D. 1, 6 (D.D.C. 2004). A copy of the order is attached as Exhibit "C."

The Court approved of the Rule 30(b)(6) topics on April 27, 2006:

> By Order dated May 3, 2004 [85], the parties were instructed to meet and confer to arrive at a mutually agreeable list of topics for 30(b)(6) depositions and the 30(b)(6) witnesses who will speak to those topics. The parties were further instructed to submit the list of topics and witnesses to the Court for approval within 30 days of that Order. Pursuant to that Order, on April 26, 2006, plaintiff filed Notice of Filing Joint Report and Proposed Rule 30(b)(6) Notice [200], which is, hereby, APPROVED.

A copy of the Court's April 27, 2006 order is attached here as Exhibit "D."

Lawyers should have an obligation to promote truth in litigation: through direct responsibility and by rule compliance. A lawyer with direct responsibility to promote truth, such as a government lawyer, should conduct all aspects of the litigation with a view toward producing what the lawyer believes to be a truthful outcome.  NATHAN M. CRYSTAL, *Limitations on Zealous Representation in an Adversarial System*, 32 Wake Forest L.Rev. 671, 713-714.  A lawyer may be responsible to promote the truth through compliance with rules. *Id.*

## II. ARGUMENT

Banks was entitled to have the SAA answer the Court approved Rule 30(b)(6) topics "directly and without evasion, in accordance with the information the deposed party possesses, after due inquiry.*" Mitsui & Co. v. Puerto Rico Water Resources Authority*, 93 F.R.D. 62, 66 (D.P.R.1981). The party in question here is, of course, the SAA, and not the individuals it chose to designate to

---

[2] Sanctions may also be imposed to punish those guilty of "willful bad faith and callous disregard"of court directives. *Securities and Exchange Commission v. First Financial Group of Texas, Inc.,* 659 F.2d 660, 666 (5th Cir.1981).

4

speak for it. *See, e.g., Federal Deposit Ins. Corp. v. Butcher,* 116 F.R.D. 196, 198 (E.D.Tenn. 1986).

Rule 30(b)(6) imposes a "duty to prepare the designee[ ] . . . [that] goes beyond matters personally known to the designee or to matters in which that designee was personally involved." *Poole v. Textron, Inc*., 192 F.R.D. 494, 504 (D.Md.2000), *citing United States v. Taylor*, 166 F.R.D. 356, 361 (M.D.N.C.1996). The designee must be prepared to the extent that matters are reasonably available, whether from documents, present or past employees, or other sources*. Id.* The organization is required to create a witness or witnesses with responsive knowledge. *Taylor,* 166 F.R.D. at 361.

Recently, the district court of Maryland provided a well reasoned analysis of the obligations a corporation has to prepare Rule 30(b)(6) witnesses. *Wilson v. Lakner*, 228 F.R.D. 524, 528 (D.Md. 2005). As Judge Messitte recognized:

> There can be no question that the rule imposes a duty to prepare the designee that goes beyond matters personally known to the designee or to matters in which that designee was personally involved. The designee must be prepared to the extent that matters are reasonably available, whether from documents, present or past employees, or other sources. ***Contrary to the Magistrate Judge's ruling in this case, the organization is expected to create a witness or witnesses with responsive knowledge.*** In no sense is a 30(b)(6) deposition limited to a witness or witnesses who can authenticate documents or identify other possible fact witnesses. (Emphasis added).

*Id.,* pg. 528 (citations and quotations omitted). A copy of the decision is attached here as Exhibit "E."

### A. Edward's Testimony on Behalf of the SAA

Richard Edwards was proffered by defendant to answer the Rule 30(b)(6) Topic 2: at the time of Banks' termination, "the information considered by the final decision maker" and the relevant part of Edwards response was:

5

Page 6:
 20    Q.  Now, you are here to testify regarding the
 21  identity of the person making the final decision
 22  regarding Mr. Banks' termination and the information
 1  considered by the final decision maker when
 2  determining the proper discipline to impose upon Mr.
 3  Banks; is that correct?
 4    A.  Yes.
 **5    Q.  Who did you talk to to answer that question?**
 **6    A.  Legal counsel informed me that we were**
 **7  coming here to do that.**
 **8    Q.  And did you talk to anybody else about the**
 **9  substance of that question?**
 **10    A.  No.**
Page 9:
 4    Q.  No.  I want each and every reason that Mr.
 5  Kennedy considered.  I want every one that Mr. Kennedy
 6  considered [to answer Question 1, *"and the information considered by the final decision maker when determining the proper discipline to impose on Mr. Banks."*].
 <u>7    A.  All I can say is what I heard in the room.</u>
 <u>8  I am not Mr. Kennedy.</u>
 9    Q.  So you didn't conduct any investigation by
 10  asking Mr. Kennedy what factors he considered?
 11    A.  Just what was shared in that room during
 12  that day.
 <u>13    Q.  You didn't ask him since he got the Rule</u>
 <u>14  30(b)(6) notice if he used any other factor in making</u>
 <u>15  his determination to terminate Mr. Banks?</u>
 <u>16    A.  No.</u>
 17    Q.  You didn't do any investigation to find out
 18  if he had any other written material in making his
 19  determination to terminate Mr. Banks?[3]
 20    A.  No.
 21    Q.  So as you sit here today can you give us
 22  each and every reason that Mr. Kennedy used in

                        10
 1  terminating Mr. Banks?
 2    A.  I can share the information that was shared

---

[3] The SAA "must not only produce such number of persons as will satisfy the request but, more importantly, prepare them so that they may give complete, knowledgeable and binding answers on behalf of the corporation." *Marker v. Union Fidelity Life Ins. Co.*, 125 F.R.D. 121, 126 (M.D.N.C. 1989) (citations omitted).

```
 3  at that meeting in 2000 -- May of 2003, what was
 4  discussed and what Mr. Kennedy's determination was
 5  that day.
 6     Q.  And can you tell me if Mr. Kennedy talked to
 7  Mr. Pickle after having any discussions with you in
 8  May of 2003?
 9     A.  I have no knowledge of that.
10     Q.  Did you ask Mr. Kennedy if he went and
11  talked to Mr. Pickle after having a meeting with you
12  in May 2003?
13     A.  I did not.
14     Q.  Did anyone tell to you investigate the
15  reasons that Mr. Kennedy used in determining to
16  terminate Mr. Banks?
17     A.  Repeat that question, please.
18     Q.  Did anyone tell you to do an investigation
19  to find the reasons and every reason that Mr. Kennedy
20  used in terminating Mr. Banks?
21     A.  No one told me that.
22     Q.  And you haven't done any investigation?
                              11
 1     A.  No.
```

July 13, 2006 Deposition Transcript of Richard Edwards, pg. 6-11.  A copy of the relevant pages with any required redactions is attached here as Exhibit "F."

### B. The SAA identified Edwards to answer the Rule 30(b)(6) Topic 4[4]:

> Plaintiff may pursue discovery regarding: (1) the identity of the decision makers who presented Mr. Rouse and Mr. Banks as the two best candidates for the Branch Manager position to Mr. Lenhardt; (2) the process they used; and (3) their roles in selecting the Branch Manager.

Again, Edwards testified that he did not investigate the information to answer Number 4:

```
19     Q.  Sure.  Who did you speak to do an
20  investigation about answering number two [Topic 4]?
21          MS. BENNETT-INGOLD:  You can state who you
22  spoke to.
```

---

[4] *See* Ex. A for the Topics 2, 4, and 8..

```
 1         THE WITNESS:  I spoke to our attorneys.
 2         BY MR. FARLEY:
 3     Q.  Did you speak to anyone else?
 4     A.  No. . . .

10     Q.  Who was the decision maker who presented Mr.
11  Rouse and Mr. Banks as the two best candidates for the
12  branch manager position to Mr. Lenhardt?
13     A.  Repeat that one more time, please.
14     Q.  Yes.  Who made the decision to give Mr.
15  Lenhardt two candidates for him to make his decision
16  for the branch manager position?
17     A.  I would say Anne Harkins did and Anne
18  Harkins asked me for the two candidates.
19     Q.  And have you spoken to Anne Harkins since
20  you got your Rule 30(b)(6) notice?
21     A.  No. . . .

 6     Q.  What have you done to investigate what
 7  process Anne Harkins used to identify the two
 8  candidates?
 9         MS. BENNETT-INGOLD:  I am going to object to
10  the extent it invades the attorney/client
11  communication or the attorney work product.
12         Otherwise, you can answer.
13         THE WITNESS:  Nothing.
14         BY MR. FARLEY:
15     Q.  You haven't done any investigation?
16     A.  (Shakes head.)
17     Q.  Can you answer the process that Anne Harkins
18  used?
```
*19     A.  No.  I think you have to ask Anne Harkins*
*20  that.  I can tell you that with the position reporting*
*21  to me, this position reported to me, and I can tell*
*22  you that Anne and I had discussions regarding the*
* 1  candidates.*

Edwards Dep., pg. 11-14.

Banks submits Harkins provided information to the final decision maker that poisoned the well and she made sure that the decision maker was provided with false information about Banks

after Banks was identified as a candidate.[5] *Crader v. Concordia College*, 724 F.Supp. 558, 564 (N.D.Ill.1989) (if decisonmaker's sources of information about plaintiff are "polluted by racial bias, that might be enough to poison the well"). Harkins could have provided evidence of the atmosphere of the SAA. *Conway v. Electro Switch Corp.*, 825 F.2d 593, 597 (1st Cir.1987) ("circumstantial evidence of a discriminatory atmosphere at a plaintiff's place of employment is relevant to the question of motive in considering a discrimination claim"). What is clear is that without Harkins information, Banks is prejudiced in this matter. *Freeman v. Package Machinery Co.*, 865 F.2d 1331, 1342 (1st Cir.1988) ("The inquiry into a corporation's motives need not be artificially limited to the particular officer who carried out the action.").

Banks submits that because Harkins was involved in the decision making process, her attitude could be viewed as directly reflecting the discriminatory attitude of the SAA. *Ostrowski v. Atlantic Mut. Ins. Cos.*, 968 F.2d 171, 182 (2d Cir.1992) (plaintiff may present "evidence of conduct or statements by persons involved in the decision making process that may be viewed as directly reflecting the alleged discriminatory attitude"); *Owens v. New York City Housing Authority*, 934 F.2d 405, 410 (2d Cir.), *cert. denied*, 502 U.S. 964, 112 S.Ct. 431, 116 L.Ed.2d 451 (1991) (offensive statements made by individuals with substantial influence over plaintiff's employment).

**C. The SAA identified Edwards to answer Topic 8:**[6]

> 1. Plaintiff may pursue discovery regarding formal or informal counseling received by Mr. Banks from April 2002 until May 22, 2003, because of his Office of Compliance complaints and/or his June

---

[5] Though Banks, and the Court, may guess at what Harkins would have said, the SAA's failure to investigate this matter should not deny Banks the evidence he could have received and the Court should rule against the party that violated the rules - the SAA.

[6] Edwards Dep., pg. 30.

10, 2002, complaint against Mr. Rouse, including counseling given by Rick Edwards, Skip Rouse, Jean McComish, and Doug Fertig.

For this Topic, the SAA used semantics to evade/avoid providing the discovery as the witness testified:

```
 2         I would share with you that I am not aware
 3   of any counseling or reprimand either formal or
 4   informal that occurred because of his Office of
 5   Compliance complaints.  It was zero.
 6          MR. FARLEY:  Okay.
 7          BY MR. FARLEY:
 8     Q.  And did you do an investigation within the
 9   Sergeant At-Arms to find out if it was in fact zero?
10     A.  What do you mean by that question?
11     Q.  Well, did you review Mr. Fertig's files to
12   see if he had done any counseling?
13     A.  No.
14     Q.  Did you speak to Skip Rouse to see if he had
15   done any counseling?
16     A.  No.
17     Q.  Did you speak to Mr. Pickle and see if he
18   did any counseling?
19     A.  No.
20     Q.  Did you speak to Mr. Kennedy and see if he
21   did any counseling?
22     A.  No.

 1     Q.  Did you ask anyone at the Sergeant At-Arms
 2   if they had done any counseling concerning the Office
 3   of Compliance complaints?
 4     A.  No. . . .

19     Q.  How many Office of Compliance complaints did
20   Mr. Banks make?
21          MS. BENNETT-INGOLD:  Objection as being
22   outside the scope of the 30(b)(6) deposition.

 1          You can answer if you know.
 2          THE WITNESS:  I am only aware of one. . . .

16     A.  I didn't do an investigation of what?
17     Q.  To find out what Office of Compliance
```

```
18   complaints Mr. Banks made?
19     A.   Oh, I didn't do an investigation regarding
20   that. . . .

21     Q.   And you didn't do an investigation asking if
22   anyone had done formal or informal counseling

 1   concerning those complaints? . . .

18          THE WITNESS:  I didn't do an investigation. . . .

 1     Q.   Sure.  Do you know whether Mr. Banks had to
 2   have any counseling within the Sergeant At-Arms prior
 3   to filing a complaint with the Office of Compliance?
 4     A.   I don't know that.
 5     Q.   And did you ask anyone if that's the process
 6   used to file a complaint with the Office of
 7   Compliance?
 8     A.   I did not.
 9     Q.   And did you review the Office of Compliance
10   rules and procedures prior to coming to testify here
11   today?
12     A.   No.
13     Q.   And did you review the administrative
14   requirements to filing an Office of Compliance
15   complaint?
16     A.   No.
```

Edwards Dep., pg. 36-37, 41-43, 46.

In addition, Counsel agreed that Banks could "pursue discovery regarding formal or informal counseling received by Mr. Banks from April 2002 until May 22, 2003, because of his . . . June 10, 2002, complaint against Mr. Rouse." Defendant used semantics and did not answer the Topic:

```
 4     Q.   Did you ask Ms. McComish if informal
 5   counseling could include doing an investigation and
 6   trying to work through an issue concerning Mr. Banks'
 7   complaints?
 8     A.   No.
 9     Q.   Did you talk to Skip Rouse and ask him if he
10   considered informal counseling giving reasons to Mr.
```

```
```


11  Banks to explain issues that Mr. Banks raised in his
12  complaints?
13     A.  No.
14     Q.  In this June 10, 2002 complaint that Mr.
15  Banks provided to you that wouldn't raise any
16  counseling issues; would it?
17     A.  No.
18     Q.  And the meeting you had wouldn't be called
19  counseling. It would be called an investigation;
20  right?
21     A.  Yes.
22     **Q.  And so if I wanted to find out about the**
 1  **discussions you had with Mr. Banks on July 3, 2002 I**
 2  **wouldn't call it counseling, I would call it an**
 3  **investigation; is that correct?**
 4     **A.  Yes.**
 5     Q.  And any discussions you had with Mr. Banks
 6  concerning complaints would be an investigation or a
 7  meeting; is that correct?
 8     A.  Repeat that, please.
 9     Q.  Sure. If I wanted to find out of any
10  discussions had between Mr. Banks and representatives
11  of the Sergeant At-Arms I would call those
12  investigations or meetings or conferences; is that
13  correct?
14     A.  That's correct.
15     Q.  I would never call then counseling or
16  informal counseling; would I?
17     A.  Not in the context that we typically use,
18  no.
19     Q.  *Because there is nothing within question*
20  *three [Topic 8] that could ever be answered by anyone at the*
21  *Sergeant At-Arms because formal or informal counseling*
22  *doesn't encompass these discussions you had with Mr.*
 1  *Banks on July 3, 2002; do they?*
 2     *A.  Please ask that again.*
 3     *Q.  Sure. To describe these discussions you had*
 4  *with Mr. Banks on July 3, 2002 concerning his June 10,*
 5  *2002 complaint we would never call that formal or*
 6  *informal counseling, we would call that discussions or*
 7  *a meeting or an investigation; is that correct?*
 8     *A.  That's correct.*

Edwards Dep., pg. 57-59 (emphasis added).

Defendant prepared the witness in a way that made the Rule 30(b)(6) Topic concerning counseling "because of his Office of Compliance complaints and/or his June 10, 2002," unanswerable.  Plaintiff submits that Defendant has disregarded this Court's requirement that the parties act in good faith to arrive at a mutually agreeable listing of topics for the 30(b)(6) depositions and find topics that will insure that the 30(b)(6) depositions are meaningful exercises.  *Banks v. Office of Senate Sergeant-at-Arms*, 222 F.R.D. 7, 19 (D.D.C. 2004).  Preparing a witness in a way that would ensure that they could not answer the Rule 30(b)(6) Topic is not in keeping with the requirements that discovery should be liberally construed.  The deposition-discovery rules must be broadly and liberally construed.  *Hickman v. Taylor,* 329 U.S. 495, 507 (1947) (deposition-discovery rules are to be accorded a broad and liberal treatment.)*; Comiskey v. JFTJ Corp.*, 989 F.2d 1007, 25 Fed. R. Serv. 3d 761 (8th Cir. 1993) (a party is responsible for their counsel's actions).

**B. Banks Was Prejudiced by the SAA's Failure to Provide Rule 30(b)(6) Testimony**

In the context of Rule 37 motions "prejudice" "exists if the failure to make discovery impairs the opponent's ability to determine the factual merits of the party's claim."  *Avionic Company v. General Dynamics Corporation*, 957 F.2d 555, 559 (8th Cir. 1992).  "Dilatory, evasive tactics and deliberate, repeated failures to comply with discovery orders justify dismissal and default judgment under Rule 37."  *Olson v. Chanute Production Credit Association*, 61 B.R. 384, 387 (U.S.B.C. D. Kans.); *citing Kabbe v. Rotan Mosle, Inc.,* 752 F.2d 1083 (5th Cir.1985);  *Davis v. Fendler,* 650 F.2d 1154 (9th Cir.1981).

In this case Edwards testified that, other than his own observations, he was not prepared to testify whether Kennedy "used any other factor in making his determination to terminate Mr. Banks."  Edwards Dep., pg. 10.   It could be that Kennedy terminated Banks because: (1)  Banks had filed

13

complaints in Federal Court, filed for disability, and sought to enforce his rights; or (2) Banks is African-American; or (3) Banks is disabled.[7] Banks could not discover that information, nor, could he lock the SAA in by receiving what Kennedy knows.

Banks has paid thousands of dollars to litigate this case, it is a shame that the SAA has not been required to tell him why they terminated his employment when the decision maker could have been easily asked prior to Edwards providing the testimony. The question is whether Rule 30(b)(6) should be enforced against the SAA in that same way other litigants are required to follow the rules?

Banks was entitled to know what investigation was conducted to answer his Rule 30(b)(6) Topics. *Alexander v. F.B.I.*, 186 F.R.D. 78, 97 (D.D.C. 1998) (party may not assert privilege in deposition to prevent opponent from asking questions going to the preliminary facts of the privilege); 24 *Wright & Miller* Fed. Prac. & Proc. Evid. § 5507. Edwards and Brooks testified that they reviewed documents to refresh their recollection. Edwards Dep., pg. 28, 31-32; July 13, 2006 Deposition Transcript of Catherine Brooks, pg. 11. Then the witnesses would not explain what type of investigation was conducted to gather the facts that Banks was provided. Edwards Dep., pg. 11:

```
 9   Q.  How did you investigate how to answer this
10   question?
11       MS. BENNETT-INGOLD:  Objection to the extent
12   that it would invade attorney/client communications or
13   also attorney work product.[8]
```

---

[7] This is, of course, just what Kennedy could have testified to. Whether he would have or not can not be acertained by either party or the Court because the SAA did not ask Kennedy. Banks should not be penalized by a finding that Kennedy would not have testified in a certain way, the SAA should be penalized because they have not undertaken the required investigation.

[8] "[T]he mere fact that counsel for the responding party might prepare a witness or witnesses for a 30(b)(6) deposition would not create an attorney-client privilege as to the facts of the case that the attorney and the witness might discuss." *Wilson v. Lakner, supra,* 228 F.R.D. 524 at 529.

Page 13:

```
 6      Q.  What have you done to investigate what
 7   process Anne Harkins used to identify the two
 8   candidates?⁹
 9         MS. BENNETT-INGOLD:  I am going to object to
10   the extent it invades the attorney/client
11   communication or the attorney work product.
12         Otherwise, you can answer.
13         THE WITNESS:  Nothing.
14         BY MR. FARLEY:
15      Q.  You haven't done any investigation?
16      A.  (Shakes head.)
17      Q.  Can you answer the process that Anne Harkins
18   used?
19      A.  No.  *I think you have to ask Anne Harkins*
20   *that.*  I can tell you that with the position reporting
21   to me, this position reported to me, and I can tell
22   you that Anne and I had discussions regarding the (emphasis added)¹⁰
```

Banks was informed that if he wanted his Rule 30(b)(6) Topics answered, he would have to

go ask someone else - exactly what Rule 30(b)(6) is meant to address.¹¹ Finally, Banks has no idea

---

⁹ Pursuant to Rule 612, if a witness uses a writing to refresh memory for the purpose of testifying, either (1) while testifying, or (2) before testifying, if the court in its discretion determines it is necessary in the interests of justice, an adverse party is entitled to have the writing produced at the hearing, to inspect it, to cross-examine the witness thereon, and to introduce in evidence those portions which relate to the testimony of the witness. If it is claimed that the writing contains matters not related to the subject matter of the testimony the court shall examine the writing in camera, excise any portions not so related, and order delivery of the remainder to the party entitled thereto.

¹⁰ One of the purposes of Rule 30(b)(6) is to curb a corporation from shunting a discovering party from "pillar to post" by presenting deponents who each disclaims knowledge of facts clearly known to someone in the organization. *See Cates v. LTV Aerospace Corporation*, 480 F.2d 620, 623 (5th Cir.1973).

¹¹ One of the chief purposes of Rule 30(b)(6) is to prevent the witness from disclaiming knowledge of facts that are clearly known to persons in the organization and thereby frustrating discovery. *S.E.C. v. Morelli*, 143 F.R.D. 42, 45 (S.D.N.Y. 1992). It is well settled that the corporation "must make a conscious good faith endeavor to designate the persons having knowledge of the matters sought by [the party noticing the deposition] and to prepare those

what type of investigation was conducted, which is not keeping with the requirements of Rule 30(b)(6) and this Court's orders.

The SAA knows Banks is a working man that believes he was cheated out of the American dream because of his race and for standing up for his rights, however, he is not a wealthy man. *A Report on the Conduct of Depositions*, 131 F.R.D. 613, 614 (1990) ("The costs to clients of the current system are enormous. Indeed, cost not infrequently plays a role in a client's willingness to litigate and its ability to pursue, or defend, a litigation.")  Justice Powell commented that "discovery techniques and tactics have become a highly developed litigation art--one not infrequently exploited to the disadvantage of justice." *Herbert v. Lando*, 441 U.S. 153, 179, 99 S.Ct. 1635, 1650, 60 L.Ed.2d 115 (1979).  The question here is whether the Court can, or desires, to permit the civil rights litigant the opportunity for justice.   M. POLLACK, *Discovery--Its Abuse and Correction*, 80 F.R.D. 219, 220 (1979).  (The "improper, vexatious and obstructive interference with the progress of examinations . . . violate the letter and spirit of fair and reasonable discovery and impede and delay questioning of witnesses.")

## **CONCLUSION**

Banks respectfully requests the Court to enter an Order that: (1) the SAA failed to comply with its Rule 30(b)(6) obligations to present knowledgeable witnesses to testify about the topics set forth in the Plaintiff's Rule 30(b)(6) Notice of Deposition to Defendant, Topic numbers 2, 4, and 8; (2) Defendant has willfully violated this Court's April 27, 2006, February 5, 2004 and May 3, 2004 Orders concerning the depositions of all remaining witnesses which are required to be conducted in

---

persons in order that they can answer fully, completely, unevasively, the questions posed . . . as to the relevant subject matters."  *Id.*, 143 F.R.D. at 45 (citations omitted).

16

accordance with the principles elucidated in those Orders; (3) Defendant has failed to appear for the properly noticed Rule 30(b)(6) deposition and the following designated facts shall be taken to be established for the purposes of the action in accordance:

(a) The SAA did not have a legitimate non-discriminatory reason to terminate Banks; and

(b) The SAA failed to promote Banks for discriminatory reasons and the decison maker's sources of information about plaintiff was polluted by racial bias that poisoned the well; and

(c) That the SAA made a decision on July 2, 2002 to isolate and terminate Banks because Banks filed his April 2002 (failure to promote) and June 10, 2002 complaints to enforce his rights.

Banks also requests an award of attorneys' fees and costs in preparing for and taking the Rule 30(b)(6) deposition and in bringing this motion.

Respectfully submitted,

/s/William P. Farley\_\_\_
William P. Farley #466280
Law Office of William P. Farley
900 17th Street, N.W.
Suite 1250
Washington, D.C.  20006
(202) 293-3200
Counsel for Plaintiff

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| **ROY BANKS,** )<br>　　　　　**Plaintiff,** )<br>) <br>) <br>) <br>**v.** ) <br>) <br>**OFFICE OF THE SENATE SERGEANT-** ) <br>**AT-ARMS and DOORKEEPER** ) <br>) <br>　　　　　**Defendant.** ) <br>) | Civil No.: 03CV0056 (HHK)(JMF)<br>1:03CV00686 (HHK/JMF)<br>1:03CV02080 (HHK/JMF) |

**ORDER**

Upon consideration of Plaintiff's Rule 37(d) Motion for an Order Precluding Defendant from Offering Testimony Concerning the Subject Matter of Plaintiff's Rule 30(b)(6) Notice of Deposition, the memorandum of points and authorities in support thereof, the Defendant's opposition, if any, thereto, Plaintiff's Reply and the record herein, it is the ___ day of _____ 2006 hereby:

**ORDERED** that the Plaintiff's motion be and hereby is **GRANTED**; and it is further

**ORDERED** that the SAA failed to comply with its Rule 30(b)(6) obligations to present knowledgeable witnesses to testify about the topics set forth in the Plaintiff's Rule 30(b)(6) Notice of Deposition to Defendant, topic numbers 1, 2, and 3 and it is further

**ORDERED** Defendant violated this Court's April 27, 2006, February 5, 2004 and May 3, 2004 Orders concerning the depositions of all remaining witnesses which are required to be conducted in accordance with the principles elucidated in those Orders and it is further

**ORDERED** Defendant has failed to appear for the properly noticed Rule 30(b)(6) deposition;

and it is further

**ORDERED**  and the following designated facts shall be taken to be established for the purposes of the action in accordance:

(a) The SAA did not have a legitimate non-discriminatory reason to terminate Banks; and

(b) The SAA failed to hire Banks for discriminatory reasons and the decison maker's sources of information about plaintiff was polluted by racial bias that poisoned the mind of the ultimate decision maker; and

(c)        (c) That the SAA made a decision on July 2, 2002 to isolate and terminate Banks because Banks filed his April 2002 (failure to promote) and June 10, 2002 complaints to enforce his rights; and it is further

**ORDERED** that the SAA shall pay Banks an award of attorneys' fees and costs in preparing for and taking the Rule 30(b)(6) deposition and in bringing this motion.

_____
JOHN M. FACCIOLA
UNITED STATES MAGISTRATE JUDGE

## CERTIFICATE OF SERVICE

I hereby certify that the foregoing Plaintiff's Rule 37(d) Motion for an Order Precluding Defendant from Offering Testimony Concerning the Subject Matter of Plaintiff's Rule 30(b)(6) Notice of Deposition, was served on all Appellants by emailing a copy and placing a copy in the U.S. Mail, First Class, postage prepaid, this 15th day of August 2006 to:

> Matthew D. Keiser, Esquire
> Senate Senior Counsel for Employment
> Office of the Senate Chief Counsel for Employment
> PO Box 77053
> Washington, DC 20013
> Counsel for Appellant

> /s/ William P. Farley
> **William P. Farley 466280**
> **Law Office of William P. Farley, P.C.**
> 900 17th Street, N.W.
> Suite 1250
> Washington, D.C. 20006
> (202) 293-3200