UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| ROY BANKS, | ) | |
| | ) | |
| Plaintiff, | ) | Case Nos.  1:03CV00056 |
| | ) | (HHK/JMF); |
| v. | ) | 1:03CV00686 (HHK/JMF); |
| | ) | 1:03CV02080 (HHK/JMF) [JOINED] |
| OFFICE OF THE SENATE SERGEANT- | ) | |
| AT-ARMS and DOORKEEPER of the | ) | Status Conference Set for |
| UNITED STATES SENATE, | ) | November 14, 2006 |
| | ) | |
| Defendant. | ) | |
| | ) | |

## DEFENDANT'S OPPOSITION TO PLAINTIFF'S RULE 37 MOTION

Defendant, Office of the Senate Sergeant-at-Arms and Doorkeeper of the United States Senate ("SAA"), opposes Plaintiff's Rule 37 Motion for an Order Precluding Defendant from Offering Testimony Concerning the Subject Matter of Plaintiff's Rule 30(b)(6) Notice of Deposition and Federal Rules of Evidence, Rule 612 Request for Documents ("Pl's Rule 37 Motion").  Plaintiff Roy Banks ("Plaintiff") complains that the SAA did not adequately prepare Mr. Richard Edwards, one of the SAA's deponents pursuant to Rule 30(b)(6) of the Federal Rules of Civil Procedure ("Rule 30(b)(6)"), to answer questions on its behalf and that the SAA denied Plaintiff information regarding the "investigations" Mr. Edwards conducted to prepare for his deposition.  To the contrary, Mr. Edwards has first-hand knowledge regarding all of his designated topics and spent over 10 hours preparing for a 2-hour deposition.  Further, he

answered all questions regarding any investigations he conducted to prepare for his deposition. Plaintiff's allegations are without merit, and the Rule 37 Motion should be denied.

## BACKGROUND

On April 26, 2006, the parties met to discuss Plaintiff's Rule 30(b)(6) topics.[1]  The parties agreed on the Rule 30(b)(6) topics and submitted them to this Court.  (Ex. B, Docket No. 200, Notice of Filing Joint Report and Proposed Rule 30(b)(6) Notice.)[2]  The Court approved the topics on April 27, 2006.  (*See* Docket, April 27, 2006, Minute Order.)  The SAA then designated three SAA managers as its Rule 30(b)(6) deponents. (Ex. C, Docket No. 201, List of Deponents for Plaintiff's Rule 30(b)(6) Deposition.)  Ms. McComish, the SAA's Senior Human Resources Administrator, was designated as the SAA's Rule 30(b)(6) deponent for Topics 1, 3, 5, and 7; Ms. Brooks, the SAA's Workers' Compensation Administrator, was designated as the SAA's Rule 30(b)(6) deponent for Topic 6; and Mr. Edwards, the SAA's Administrative Assistant to the Sergeant at Arms, was designated as the SAA's Rule 30(b)(6) deponent for Topics 2, 4, and 8.  (Ex. C.)  Mr. Edwards and Ms. Brooks were deposed on July 13, 2006, and Ms. McComish was deposed on July 21, 2006.

---

[1] Prior to the April 2006 meeting, the parties had last discussed the Rule 30(b)(6) topics in December 2004.  On December 6, 2004, after several meetings with Plaintiff's counsel regarding the Rule 30(b)(6) topics, the SAA's counsel sent Plaintiff's counsel a list of the revised Rule 30(b)(6) topics for his review.  (*See* Ex. A hereto, Dec. 6, 2004, Letter to Farley with Attachments.)  Plaintiff's counsel did not respond to the December 6, 2004, letter and did not communicate further with the SAA regarding Plaintiff's Rule 30(b)(6) topics until April 2006.

[2] All docket entries are to the official docket entries for Case No. 1:03cv00056.

**ARGUMENT**

I.  **RICHARD EDWARDS HAS FIRST-HAND KNOWLEDGE REGARDING TOPICS 2, 4, AND 8 AND WAS THOROUGHLY PREPARED TO TESTIFY ON BEHALF OF THE SAA AS TO EACH TOPIC**

Contrary to Plaintiff's allegations, Mr. Edwards is knowledgeable about and was thoroughly prepared to answer questions on behalf of the SAA relating to Topics 2, 4, and 8.

Pursuant to Rule 30(b)(6), a party may notice the deposition of a governmental entity. Fed. R. Civ. P. 30(b)(6). Once the party noticing the Rule 30(b)(6) deposition "desribe[s] with reasonable particularity the matters on which examination is requested," *see id.*, the responding entity must: (1) "designate a deponent who is knowledgeable on the subject matter identified as the area of inquiry"; (2) "designate more than one deponent if multiple deponents are necessary to respond to all of the relevant areas of inquiry"; (3) "prepare the deponent so that he or she can testify on matters not only within his or her personal knowledge, but also on matters reasonably known by the responding entity"; and (4) substitute a deponent if it becomes evident that the proffered deponent is unable to answer questions relating to the relevant inquiry, *United States ex rel. Fago v. M & T Mortgage Corp.*, 235 F.R.D. 11, 22-23 (D.D.C. 2006). Although an organization is obligated to prepare its deponent, *see id.*, a Rule 30(b)(6) deponent "is under no obligation to investigate anything if she otherwise answers the questions on the basis of her knowledge," and the deponent has "no responsibility to investigate plaintiff's case for him," *Banks v. Office of the Senate Sergeant-at-Arms*, 222 F.R.D. 7, 19 (D.D.C. 2004).

In this case, the SAA complied fully with its obligations under Rule 30(b)(6). The SAA designated three deponents who were knowledgeable regarding the Rule 30(b)(6) topics—Ms. McComish, Ms. Brooks, and Mr. Edwards. (Ex. C.)

3

Furthermore, the SAA thoroughly prepared the deponents. Ms. McComish spent almost 19 hours preparing for her 2-hour deposition. (*See* Ex. D, McComish Decl. ¶ 3; Ex. E, Bennett-Ingold Decl. ¶ 5. ) Ms. Brooks spent approximately 9 and 1/2 hours preparing for her 33 minute deposition. (Ex. F, Brooks Decl. ¶ 3; Ex. E ¶ 4.) Mr. Edwards spent between 11 and 13 hours preparing for his 2-hour deposition. (*See* Ex. G, Edwards Decl. ¶ 3; Ex. E ¶ 3.)

At no time were the deponents unable to answer questions regarding their designated topics during their depositions. Furthermore, Plaintiff's counsel never asserted at the depositions that the deponents were unprepared or unknowledgeable, and he never requested that the SAA substitute another Rule 30(b)(6) deponent.

Despite the SAA's compliance with its obligations under Rule 30(b)(6), *see United States ex rel. Fago*, 235 F.R.D. at 22-23, Plaintiff now claims that the SAA failed to prepare Mr. Edwards properly to testify on the subject matter of his designated topics.[3] As set forth below, Plaintiff's allegations are without factual or legal bases.

> **A.    As Mr. Edwards Was Present When The Decision Was Made To Terminate Plaintiff's Employment, He Knows The Information That Mr. Kennedy Considered When Making This Decision And Was Fully Prepared To Answer Questions Regarding Topic 2.**

Plaintiff erroneously implies that Mr. Edwards was not prepared to testify as to Topic 2.[4] (Pl's Rule 37 Motion at 5-7.) Topic 2 states:

---

[3] While "limiting" his motion to complaints about Mr. Edwards's deposition, Plaintiff also asserts that the SAA failed to answer all eight of the Rule 30(b)(6) topics. (Pl's Rule 37 Motion at 1.) This unsubstantiated allegation, like Plaintiff's motion as a whole, is without merit.

[4] Plaintiff does not provide any factual or legal analysis to support this allegation. Instead, he simply quotes the portion of the deposition transcript that relates to Topic 2. (*See* Pl's Rule 37 Motion at 5-7.)

>Plaintiff may pursue discovery regarding the identity of the person making the final decision regarding Mr. Banks' termination and the information considered by the final decision maker when determining the proper discipline to impose on Mr. Banks.

(Ex. B at 3.) Mr. Edwards testified that Mr. Kennedy, the SAA's Deputy Sergeant at Arms at that time, was the final decision maker regarding the termination of Plaintiff's employment (Ex. H, Edwards Dep. 8:8-10, July 13, 2006)[5] and that Mr. Edwards knew all the information Mr. Kennedy considered in making this decision (Ex. H at 8:11-14). Mr. Edwards made clear that he could provide this information because he was at the meeting where Mr. Kennedy and other SAA managers discussed whether and for what reasons Plaintiff's employment should be terminated—a decision that Mr. Kennedy ultimately approved at the conclusion of the meeting. (Ex. H at 8:11-14; 10:2-5.) As Mr. Edwards stated: "I can share the information that was shared at that meeting in 2000—May of 2003, what was discussed and what Mr. Kennedy's determination was that day."[6] (Ex. H at 10:2-5.) The following exchange ensued:

>Q: Can you tell me each and every factor that Mr. Kennedy determined—that Mr. Kennedy considered in his decision to terminate Mr. Banks.

---

[5] Pursuant to the October 1, 2003, Stipulated Protective Order, the SAA has designated portions of Mr. Edwards's deposition as "Confidential." These portions have been redacted from the public filing and have been filed under seal.

[6] Mr. Edwards's February 10, 2004, deposition confirms Mr. Edwards's personal knowledge as to the subject matter of Topic 2. In that deposition, Mr. Edwards testified that he, along with others, including Mr. Doug Fertig, the SAA Director of Human Resources at that time, met with Mr. Kennedy to discuss the appropriate discipline for Plaintiff in response to his racist statement. (Ex. I, Edwards Dep. 269:4-19, Feb. 10, 2004.) Mr. Edwards testified that the meeting participants discussed who would give Plaintiff the termination letter and also discussed Plaintiff's age and years of service. (Ex. I at 270:11-14; 276:6-7.) The participants did not discuss Plaintiff's race, and no one commented that Plaintiff was not racist or that he was a good employee or tried hard. (Ex. I at 270:17-271:3; 275:14-276:7.) At the conclusion of this meeting, Mr. Kennedy agreed with Mr. Edwards's and Mr. Fertig's recommendation to terminate Plaintiff's employment. (Ex. I at 265:22-266; 275:6-8.)

> A: I can tell you what was discussed in that meeting.
>
> Q: I want to know what each and every factor was that Mr. Kennedy considered in his decision to terminate Mr. Banks.
>
> A: I can tell you the factor that the people in that room discussed that was considered as part of that.
>
> Q: No. I want each and every reason that Mr. Kennedy considered. I want every one that Mr. Kennedy considered.
>
> A: All I can say is what I heard in the room. I am not Mr. Kennedy.

(Ex. H at 8:15-9:8.)

Topic 2 does not require Mr. Edwards to state every factor that Mr. Kennedy considered in making the decision to terminate Plaintiff's employment, as Plaintiff's counsel demanded. (Ex. H at 8:15-9:8.) Rather, Topic 2 requires a Rule 30(b)(6) deponent to testify about the information Mr. Kennedy considered that is within the deponent's personal knowledge and is reasonably known by the responding entity. *See United States ex rel. Fago*, 235 F.R.D. at 22-23. The SAA fulfilled this requirement because Mr. Edwards has first-hand knowledge of every factor that was discussed at the meeting as a reason for the termination, and the SAA, which has thoroughly investigated the subject matter of Topic 2 in response to a previous discovery request, knows of no other factors Mr. Kennedy may or may not have considered. (*See* Ex. J, Supplemental Response to Plaintiff's First (sic) [Second] Set of Interrogatories at 12.) Accordingly, Plaintiff's assertion that Mr. Edwards, a high-level manager at the SAA with first-hand knowledge of the information considered by Mr. Kennedy in determining whether to

6

terminate Plaintiff's employment, was not an adequate Rule 30(b)(6) deponent with regard to Topic 2 is without merit.[7]

Rather than ask Mr. Edwards about his knowledge of the subject matter of Topic 2, Plaintiff's counsel repeatedly asked Mr. Edwards if he had talked with other people, including Mr. Kennedy, about Topic 2 in preparation for his deposition. (Ex. H at 9:9-11:1.) As this Court has already held, however, a deponent with first-hand knowledge has no duty to conduct an investigation for opposing counsel. *See Banks*, 222 F.R.D. at 19. Plaintiff's counsel made a strategic decision earlier in the litigation not to depose Mr. Kennedy as a fact witness, and Mr. Edwards had no obligation to "depose" Mr. Kennedy for Plaintiff's counsel.

Moreover, the SAA has already provided the information requested in Topic 2 in its Supplemental Response to Plaintiff's First (sic) [Second] Set of Interrogatories ("Supplemental Response").[8] (*See* Ex. J.) Mr. Kennedy signed the Supplemental Response on behalf of the SAA and declared under penalty of perjury that he had reviewed the Supplemental Response and that, to the best of his knowledge, the response was accurate. (Ex. J at Verification.) Interrogatory 7 of Plaintiff's First (sic) [Second] Set of Interrogatories asks the SAA to "[d]escribe in detail all conversations which concern the termination of Mr. Banks . . . ." (Ex. J at 11.) As detailed in the SAA's response to Interrogatory 7, Mr. Fertig informed Mr. Kennedy of the racist statement that Plaintiff had made to him. (Ex. J at 12.) The managers then discussed the fact that this was

---

[7] Mr. Kennedy no longer works for the SAA (Ex. K, McComish Dep. 29:14-19, July 21, 2006), and Mr. Fertig has passed away (Ex. H at 12:22-13:3).

[8] In addition to the Supplemental Response, both Mr. Edwards, *see supra* footnote 6, and Mr. Fertig (*see* Ex. L, Fertig Dep. 188:4-16; 189:18-193:2; 194:19-195:15; 196:19-198:1, Jan. 29, 2004) testified in their depositions regarding the information considered by Mr. Kennedy in determining whether to terminate Plaintiff's employment.

the first time that a management level employee had made a racist statement and that the discipline that the SAA imposed on Plaintiff would set a precedent for future discipline. (Ex. J at 12.) The managers discussed the level of discipline to impose, including suspension, demotion, and termination. (Ex. J at 12.) Mr. Fertig recommended that Plaintiff's employment be terminated, and Mr. Edwards supported this recommendation. (Ex. J at 12.) Mr. Kennedy then confirmed that the SAA would not tolerate racist behavior, and he approved Plaintiff's termination at that time. (Ex. J at 12.)

> **B.  Mr. Edwards Has Knowledge Of The Process Used To Select Plaintiff And Mr. Rouse As The Finalist For The Branch Manager Position, And He Was Fully Prepared To Testify As To Topic 4**

Plaintiff also incorrectly alleges that Mr. Edwards refused to testify as to the subject matter of Topic 4. (Pl's Rule 37 Motion at 7-9.) Topic 4 states:

> Plaintiff may pursue discovery regarding the identify [sic] of the decision makers who presented Mr. Rouse and Mr. Banks as the two best candidates for the Branch manager position to Mr. Lenhardt; the process they used; and their roles in selecting the Branch Manager.

(Ex. B at 4.) Mr. Edwards and Plaintiff's counsel had the following exchange regarding Topic 4:

> Q:    Who was the decision maker who presented Mr. Rouse and Mr. Banks as the two best candidates for the branch manager position to Mr. Lenhardt?
>
> A:    Repeat that one more time, please.
>
> Q:    Yes. Who made the decision to give Mr. Lenhardt two candidates for him to make his decision for the branch manager position?
>
> A:    I would say Anne Harkins did and Anne Harkins asked me for the two candidates.
>
> * * *
>
> Q:    You haven't done any investigation?

> A: (Shakes head.)
>
> Q: Can you answer the process that Anne Harkins used?
>
> A: No, I think you have to ask Anne Harkins that. I can tell you that with the position reporting to me, this position reported to me, and I can tell you that Anne and I had discussions regarding the candidates.

(Ex. H at 12:10-14:1.) Rather than ask additional questions to determine the extent of Mr. Edwards's knowledge regarding the interview process, Plaintiff's counsel immediately turned to another topic. (Ex. H at 14:2-3 [Filed Under Seal].)

Mr. Edwards's answers, however, indicate that he has first-hand knowledge regarding the interview processes, including the process of presenting Mr. Rouse, the individual ultimately selected as Branch Manager, and Plaintiff as the top two candidates to Mr. Lenhardt, the Senate Sergeant at Arms at that time.[9] Mr. Edwards testified that Ms. Harkins, the SAA's Deputy Sergeant at Arms at that time,[10] presented the top two candidates to Mr. Lenhardt (Ex. H at 12:14-18) and that she, in turn, had asked Mr. Edwards for the top two candidates (Ex. H at 12:17-18). He also stated that he and Ms. Harkins discussed the candidates. (Ex. H at 13:17-14:1.) Mr. Edwards's statement that Plaintiff's counsel should ask Ms. Harkins about her interview process does not indicate that he was unable or unwilling to provide testimony regarding Topic 4. Plaintiff's counsel had the obligation to probe Mr. Edwards's obvious knowledge regarding this topic. He chose not to do so, and he cannot now complain that he was denied discovery.

---

[9] Plaintiff's counsel has already deposed Mr. Lenhardt, the decision maker with regard to whether Mr. Rouse or Plaintiff would be selected as the Branch Manager. (Ex. M, Lenhardt Dep. 41:19-42:3, Feb. 13, 2004.)

[10] Ms. Harkins no longer works at the SAA. (Ex. M at 25:17-21.)

9

Moreover, this Court has already concluded that the process leading up to presenting Mr. Rouse and Plaintiff as the top two candidates for the Branch Manager position is legally irrelevant. *See Banks v. Office of the Senate Sergeant-at-Arms*, 222 F.R.D. 7, 15 (D.D.C. May 3, 2004). In its May 3, 2004, decision, the Court considered the SAA's objection to an interrogatory propounded by Plaintiff that requested information regarding all of the applicants who applied for the Branch Manager position. *Id.* at 15-16. The SAA argued that the information regarding the other applicants was irrelevant because Plaintiff was selected as a finalist and was considered by Mr. Lenhardt for the Branch Manager position. *Id.* at 16. This Court agreed, stating that "plaintiff cannot claim that he was discriminated against during the first round of application decisions because he survived that round and was named as a finalist." *Id.* at 16. As such, Plaintiff's assertion that he is prejudiced because he does not have the information requested in Topic 4 (Pl's Rule 37 Motion at 9) is legally inaccurate. Moreover, as noted above, to the extent that he does not have the information requested in Topic 4, it is because he chose not to ask questions regarding this topic.

* * *

Almost from the start of Mr. Edwards's deposition, it was clear that Plaintiff's counsel was deliberately not asking substantive questions regarding Topics 2 and 4 but instead was focusing on whether Mr. Edwards had talked with other people about these topics in preparation for his deposition. (*See* Ex. H at 7:13-8:7; 9:9-20; 10:10-11:1; 11:19-12:8; 12:19-13:16; 24:12-17; 25:11-26:5; 26:15-21.) Because of this line of questioning, the SAA's counsel had Mr. Edwards confirm on the record what was already clear from his deposition testimony— that he

was prepared to testify and had knowledge regarding each of the designated topics. (Ex. H at 49:1-18; 50:7-9.)

### C. Mr. Edwards Fully Answered Topic 8, And Plaintiff Has No Grounds For Asserting A Lack Of Good Faith Or Preparedness By The SAA

Finally, Plaintiff incorrectly asserts that the SAA "played semantics" not to answer Topic 8. (Pl's Rule 37 Motion at 9-13.) Topic 8 states:

> Plaintiff may pursue discovery regarding formal or informal counseling received by Mr. Banks from April 2002 until May 22, 2003 because of his Office of Compliance complaints and/or his June 10, 2002 complaint against Mr. Rouse, including counseling given by Rick Edwards, Skip Rouse, Jean McComish, and Doug Fertig.

(Ex. B at 4-5.) Mr. Edwards fully answered questions relating to this topic by explaining that Plaintiff did not receive any counseling from the SAA because he had filed a complaint with the Office of Compliance or because he had complained to Mr. Edwards about Mr. Rouse. Mr. Edwards testified:

> Q: And did he receive any informal counseling concerning any of these matters that are encompassed within number three? . . .
>
> A: I would share with you that I am not aware of any counseling or reprimand either formal or informal that occurred because of his Office of Compliance complaints. It was zero. . . .

(Ex. H at 35:9-11; 36:2-5.)

> Q: Now, were there any other types of counseling given to Mr. Banks because of any other complaint that is encompassed within question number three?
>
> A: No.

(Ex. H at 37:14-18.)

> A: I can say very clearly that Mr. Banks did not receive any formal or informal counseling because of his Office of Compliance complaints.

11

(Ex. H at 44:5-8.)

>A: In my view it does mischaracterize. I said in my view very clearly Mr. Banks did not receive any formal nor informal counseling or reprimands because of his Office of Compliance complaints. What I did say was that Mr. Banks received a written reprimand I think during this time period but it was based off of his lack of performance.

(Ex. H at 47:5-11.)

In addition to this testimony, Mr. Edwards explained that during the relevant time period he would have approved all counseling for Plaintiff before it was given. (Ex. H at 37:9-13; 44:14-45:7.) He testified:

>Q: With regard to topic number three would all of the counseling, formal or informal counseling and reprimands that were received by Mr. Banks first come through you?
>
>A: Yes.

(Ex. H at 50:10-14.)[11]

Although Mr. Edwards answered Topic 8 and provided the basis for his knowledge with regard to this topic, Plaintiff's counsel now claims that "the SAA used semantics to evade/avoid providing the discovery . . . ." (Pl's Rule 37 Motion at 10.) Plaintiff's counsel further alleges that the SAA prepared the witness in a way that made Topic 8 unanswerable and that the SAA has therefore disregarded the Court's admonition to act in good faith. (Pl's Rule 37 Motion at

---

[11] Plaintiff's counsel's objection to this testimony as being inconsistent with previous testimony (*see* Ex. H at 50:15-20) is factually inaccurate. Mr. Edwards testified that "[b]efore Mr. Rouse would give a counseling he would have to route that through me." (Ex. H at 44:16-17.) With respect to Mr. Fertig, Plaintiff's counsel never established that Mr. Fertig could counsel an employee under Mr. Edwards's supervision, but, even if Mr. Fertig could have done so, Mr. Edwards testified that the counseling would have to go through him first. (Ex. H at 44:21-45:1.) Mr. Edwards further confirmed that "[a]ny counseling formal or informal are supposed to be routed through someone at my level before they are given by anybody." (Ex. H at 45:5-7.) There is no testimony of any exceptions to this policy.

13.) Rather than explain the basis for these allegations, Plaintiff simply quotes portions of the deposition transcript. First, Plaintiff quotes Mr. Edwards's testimony that he did not conduct an investigation[12] with regard to Topic 8. (Pl's Rule 37 Motion at 10.) As already discussed, this Court has held that a Rule 30(b)(6) deponent does not have an obligation to conduct an investigation when the deponent has personal knowledge of the facts at issue. *See Banks*, 222 F.R.D. at 19. As set forth above, Mr. Edwards testified that because all counseling for Plaintiff had to be approved by him, he knew that Plaintiff had not received any counseling as a result of filing any complaints. (Ex. H at 37:9-13.)

Second, Plaintiff's counsel quotes Mr. Edwards's testimony distinguishing "counseling" from other types of communications with employees. (Pl's Rule 37 Motion at 11-12.) This clarification was necessary because Plaintiff's counsel assumed that the SAA considered any conversation with an employee to be "counseling." (*See, e.g.*, Ex. H at 39.) Mr. Edwards explained that the word "counseling" has a specific meaning at the SAA (Ex. H at 82:17-19) and that an employee is counseled

> when a person's behavior and performance has reached a point where you sit down with them initially and have an informal counseling session with them to try to modify the behavior of the performance. If that doesn't correct the problem in the undesirable performance or the behavior continues then the supervisor or manager will meet with that same employee and then give them a written counseling memo. And then it progresses up from there in discipline ladder if you will.

(Ex. H at 82:21-83:8). In the deposition testimony quoted by Plaintiff (Pl's Rule 37 Motion at 11-12), Mr. Edwards clarified that his conversation with Plaintiff regarding Plaintiff's June 2002

---

[12]Plaintiff's counsel defined an "investigation" as going and asking someone questions regarding the Rule 30(b)(6) topic or receiving information from someone other than an attorney regarding the topic. (Ex. H at 32:2-13.)

complaint would not be considered "counseling" and would not be responsive to Topic 8 because Mr. Edwards was not addressing any performance issues but was responding to Plaintiff's complaint (Ex. H at 57:14-58:18).

The deposition testimony quoted by Plaintiff does not demonstrate that the SAA failed to provide discovery or that the SAA prepared its deponent in a way that made the topic "unanswerable." The fact that the response to Topic 8 is "none" does not diminish the importance of the discovery or call into question the SAA's good faith in preparing for the deposition. Further, to the extent that Plaintiff believed that the subject matter of Topic 8 was broader than actually written, Plaintiff's counsel could have asked additional questions, and Mr. Edwards would have answered to the best of his knowledge.[13]

## II.   MR. EDWARDS FULLY EXPLAINED THE "INVESTIGATIONS" THAT HE CONDUCTED IN PREPARATION FOR HIS RULE 30(B)(6) DEPOSITION AND DID NOT WITHHOLD ANY INFORMATION REGARDING DOCUMENTS THAT HE REVIEWED

Plaintiff argues that "the [Rule 30(b)(6)] witnesses would not explain what type of investigation was conducted to gather the facts that Banks was provided." (Pl's Rule 37 Motion at 14.) Plaintiff also implies that Mr. Edwards withheld information regarding documents that he had reviewed in preparation for his deposition. (Pl's Rule 37 Motion at 14.) These allegation have no factual or legal support.

This Court has held that the attorney work product protects conversations between an attorney and his or her client's employees in preparation for a deposition. *See Banks v. Office of the Senate Sergeant-at-Arms*, 233 F.R.D. 1, 5 (D.D.C. 2005). This Court explained:

---

[13]Pursuant to this Court's instruction, *see Banks*, 222 F.R.D. at 18-19, the SAA's counsel allowed the witness to answer questions outside the scope of the agreed upon topics.

> The questions and comments by a lawyer and his client's employees as they discuss legal and factual questions that have arisen in litigation or prepare for a deposition are at the heart of a lawyer's preparation and surely the attorney must be permitted to do that in peace, free from the intrusion of opposing counsel.

*Id.*; *see also Alexander v. FBI*, 186 F.R.D. 200, 203 (D.D.C. 1999) (concluding that the attorney-client privilege protects "the substance of communications between the witness and his or her counsel in preparation for a deposition"). This Court further noted that to the extent that opposing counsel was "trying to force his opponent to recreate the conferences that defendant's counsel held with their client's employees as they prepared the defense," the questions "were unquestionably objectionable." *See Banks*, 233 F.R.D. at 6.

In this case, the SAA's counsel allowed Mr. Edwards[14] to answer all questions relating to any "investigation" that he conducted to prepare for his deposition, except to the extent that the questions invaded the attorney-client privilege or attorney work product. (*See* Ex. H at 9:9-20; 10:18-11:1; 12:3-4; 13:15-16; 32:2-22; 36:8-37:13; 41:5-43:18; 65:10-12; 69:22-70:2; 77:20-78:1.) Plaintiff's brief does not cite any deposition testimony to the contrary. With respect to any conversations with counsel, the SAA's counsel allowed Mr. Edwards to answer whether or not he had met with counsel but instructed him not to discuss the substance of his conversations with counsel. (Ex. H at 11:19-12:8.) Based on this Court's prior ruling in this case, any attempt by Plaintiff's counsel to learn the substance of the deponent's conversations with counsel was "unquestionably objectionable," *Banks*, 233 F.R.D. at 5, and the SAA's counsel's instruction to

---

[14] Plaintiff appears to allege that Ms. Brooks did not explain what type of investigation she conducted (Pl's Rule 37 Motion at 16), but he does not support this assertion with any citation to Ms. Brooks's deposition testimony. The facts demonstrate that Ms. Brooks, like Mr. Edwards, answered all questions relating to any investigation that she conducted to prepare for her deposition. (*See* Ex. N, Brooks Dep. 8:6-11; 10:8-9, 16-22, July 13, 2006.)

the deponent not to reveal this information was not only proper but also necessary to preserve the privilege, s*ee id.*

Moreover, during Mr. Edwards's deposition, Plaintiff's counsel never asked Mr. Edwards if he had reviewed any documents that refreshed his recollection, and Mr. Edwards, therefore, could not have withheld such information. Plaintiff's counsel asked only if Mr. Edwards had conducted any "investigation," which, as Plaintiff's counsel explained to Mr. Edwards, meant asking other people about the topics and receiving information about the topics from people other than attorneys. (Ex. H at 32:2-13.) As made clear from Ms. Brooks's deposition (*see* Ex. N at 11:1-6; 12:15-21), the SAA's counsel would have allowed Mr. Edwards to disclose any documents that he reviewed that refreshed his recollection. Plaintiff's counsel cannot blame the SAA for his own failure to probe into this area during the deposition.

## **CONCLUSION**

As demonstrated, Plaintiff's allegations that the SAA failed to properly prepare Mr. Edwards and that the SAA failed to disclose information regarding Mr. Edwards's investigations are frivolous, and Plaintiff is not entitled to any relief under Rule 37 of the Federal Rules of Civil Procedure.

Dated: August 28, 2006　　　　　　　　　　Respectfully submitted,

　　　　　　　　　　　　　　　　　　　　/s/ Dawn Bennett-Ingold
　　　　　　　　　　　　　　　　　　　　Jean M. Manning
　　　　　　　　　　　　　　　　　　　　D.C. Bar No. 439942
　　　　　　　　　　　　　　　　　　　　Senate Chief Counsel for Employment

　　　　　　　　　　　　　　　　　　　　Matthew D. Keiser
　　　　　　　　　　　　　　　　　　　　D.C. Bar No. 458174
　　　　　　　　　　　　　　　　　　　　Senate Senior Counsel for Employment

　　　　　　　　　　　　　　　　　　　　Dawn Bennett-Ingold
　　　　　　　　　　　　　　　　　　　　D.C. Bar No. 482083
　　　　　　　　　　　　　　　　　　　　Senate Assistant Counsel for Employment

　　　　　　　　　　　　　　　　　　　　Office of Senate Chief Counsel for Employment
　　　　　　　　　　　　　　　　　　　　P.O. Box 77053
　　　　　　　　　　　　　　　　　　　　Washington, D.C. 20013
　　　　　　　　　　　　　　　　　　　　Telephone: (202) 224-5424

　　　　　　　　　　　　　　　　　　　　*Attorneys for Defendant, Office of the Senate Sergeant-at-Arms and Doorkeeper of the United States Senate*